People of the State of Illinois, Defendant in Error,
v. Commodore Tilden, Plaintiff in Error.

Gen. No. 49,471.

First District, Third Division.

July 3, 1964.

Thomas F. Roche, of Chicago, for plaintiff in error.

William G. Clark, Attorney General, of Springfield
(Daniel P. Ward, State's Attorney, of Chicago, Fred
G. Leach and E. Michael O'Brien, Assistant Attorneys General, Elmer C. Kissane and William J. Nellis,
Assistant State's Attorneys, of counsel), for defendant in error.

MR. JUSTICE SULLIVAN delivered the opinion of the court.

This case is before us on a writ of error to review a judgment of the criminal court of Cook County entered on a jury verdict finding the defendant, Commodore Tilden, guilty of murder and fixing his punishment at fourteen years in the state penitentiary.

The defendant's first contention is that People's exhibits two, three and four, being certain articles of clothing worn by one James Pickett on the night of the shooting, although not admitted in evidence, were improperly displayed to the jury, and that the defendant was prejudiced thereby. James Pickett was the uncle of the victim, Essie Pickett.

According to defendant's account of the events on the night in question, he had spent the evening with James Pickett, Robert Freeman, Leon Hampton and Essie Pickett. At about three a. m. on the morning of March 12, 1960, he was riding alone in the back seat of James Pickett's automobile. Essie Pickett was driving, Robert Freeman was sitting to the right of her, and James Pickett was sitting to the right of Robert Freeman, next to the door. Defendant had been engaged in an argument with James and Essie Pickett. Essie Pickett stopped the car and went around to the trunk. When she returned she was carrying something. James Pickett pulled out a gun and pointed it at defendant. Defendant grabbed the gun and it discharged. He struggled with James Pickett for possession of the gun and during the struggle the gun fired two more times.

James Pickett testified that the defendant pulled the gun on him and held it to the back of his head. Essie Pickett got out of the car, pulled the front seat forward and ordered defendant to leave the car. Defendant then fired two shots into her. James Pickett started to get out of the car to assist her and de-

355

fendant shot him in the chest. The witness further testified that he then got out of the car and ran over and started pounding on a nearby window. Defendant shot him again. He turned and started running and defendant shot him twice more, one shot hitting him in the back. This testimony was corroborated by the testimony of Robert Freeman.

James Pickett identified People's exhibits two, three and four as the clothing he was wearing at the time of the shooting. He also identified certain holes in the clothing as having been caused by the bullets fired into him by the defendant.

In support of his contention that it was prejudicial to allow these articles of clothing to be displayed to the jury, defendant cites People v. Nickolopoulos, 25 Ill2d 451, 185 NE2d 209. In the Nickolopoulos case the defendant was charged with assault with intent to commit murder. Defendant testified that he was too drunk to know what he was doing. The undisputed evidence established that the defendant had shot one Kallianiotis. Testimony establishing the presence of blood on the victim's clothing, on the floor and on the stretcher on which he was carried from the scene was allowed to stand over objection as was testimony regarding the extent of the victim's injuries. A question was asked of the defendant as to whether or not when he saw Kallianiotis in the hospital, Kallianiotis was being fed intravenously. An objection to this question was sustained. The Illinois Supreme Court held that the above testimony and the objected to question were irrelevant and operated to the prejudice of the defendant. The court on page 454 quoted with approval from People v. Carter, 410 Ill 462, 102 NE2d 312, as follows:

"The specific intent required by the charge is found, not from the nature or seriousness of the injury inflicted, but from proof of the reckless character and manner of the assault, the instru-

ment made use of by the assailant, and the other facts and circumstances shown by the evidence as indicating a malicious heart and mind."

Further on the same page the court said:

"A gun is a deadly weapon per se and one who deliberately fires a gun at or towards another person, either with malice aforethought or with a total disregard of human life, may be convicted of assault with intent to kill the person so attacked, irrespective of the extent of the injuries inflicted. People v. Wilson, 342 Ill 358.

"The evidence of blood on the victim's clothing, the floor and the stretcher and the evidence of the extent of the victim's injuries was irrelevant and improper. The question concerning the victim's condition in the hospital was likewise improper and even though an objection to this question was sustained, the jury was informed as to the victim's condition. The erroneous evidence was of such a nature as to be highly prejudicial to the defendant."

■ In the case at bar, if the defendant's story be believed, he did not deliberately fire the gun at or towards anyone. His contention is that the gun was initially in the possession of James Pickett, and the fatal shots were fired either while the defendant was attempting to wrest the gun from him, or during the struggle subsequent to defendant's gaining control of the weapon. Under such circumstances, malice would not be implied, and it would not be sufficient to establish malice for the state to show only that the defendant fired the fatal shots.

■ The clothing worn by James Pickett on the night of the shooting, complete with bullet holes, showed certain inaccuracies in and improbabilities of

the defendant's version of the shooting. Defendant testified first that during the struggle the gun went off three times. On cross-examination he revised this figure to four. The holes in James Pickett's clothing showed that four shots were fired into James Pickett alone. With the two shots fired into Essie Pickett, that makes a total of six shots fired. The clothing showed a patent inaccuracy in defendant's story. According to the defendant, the gun went off accidentally during the struggle. Despite the fact that he did not aim the gun, every single shot fired found its way into the body of either James Pickett or Essie Pickett. This is an extraordinary coincidence, especially when considered in the light of defendant's testimony that he had been arguing with these two people just prior to the incident. Also, although it is not conclusive, one of the holes in the clothing showed that James Pickett had been shot in the back, and such circumstance is not wholly consistent with a plea of self-defense. Since People's exhibits two, three and four were competent to show patent inaccuracies and improbabilities in defendant's story which could be considered by the jury, and also since they tended to corroborate the stories of the People's two eyewitnesses, it was not an abuse of the trial court's discretion to allow them to be displayed before the jury. People v. Morris, 254 Ill 559, 98 NE2d 975; Henry v. People, 198 Ill 162, 65 NE 120.

■ Defendant also complains of the introduction into evidence of People's exhibit number one, the purported murder weapon, a nickle plated, black handled revolver. The exhibit was initially marked for identification during the testimony of Robert Freeman, a witness to the shooting. Mr. Freeman testified that the first time he had seen the exhibit, he was at the defendant's home, and the defendant had pulled the

358

gun out and pointed it at James Pickett. Leon Hampton was present at the time of this occurrence, and it took place prior to the fatal shooting of Essie Pickett. He further testified that he saw the gun a second time prior to the shooting. He was again at the home of the defendant, and the defendant was shining and playing with the gun. He saw the gun a third time on the night of the shooting when defendant was holding it and pointing it at James Pickett. He then testified to the events surrounding the shooting and stated that after the last shot was fired, defendant took him at gun point to the Colonial Hotel on the south side of Chicago. Defendant took him up to a room in the hotel and kept him there at gun point until the next day. They left the hotel the next morning and, upon spotting a police car, defendant ordered him, again at gun point, to go into a nearby tavern while he hopped a cab to make his escape. Defendant claims that because this witness couldn't identify the make or model of the gun on cross-examination, and because the shooting took place in a dark automobile at three o'clock in the morning, the witness could not have positively identified the gun. Freeman had plenty of opportunity to view the gun during the long night in the hotel room while it was being used by the defendant to hold him prisoner. This court is not prepared to say that because the witness could not testify as to the make and model of the gun, that he could not have identified it by its physical appearance after having been repeatedly exposed to it.

The State also put Leon Hampton on the stand. Mr. Hampton was the other party present at defendant's home when he pulled the gun out and pointed it at James Pickett. His testimony corroborated that of Robert Freeman in so far as it related to what happened there. He identified People's exhibit num-

ber one as the gun which defendant had on that day. He also testified that subsequent to the incident in defendant's home and prior to the shooting, defendant brought the gun to his home and asked him to keep it for him, and that at a later date, also prior to the shooting, defendant retrieved the gun. Defendant also complains about the inability of this witness to testify as to the make and model of the gun. Here, as was the case with Robert Freeman, the witness had sufficient exposure to the weapon to identify it by appearance.

James Pickett also identified the exhibit as being the gun which the defendant pulled on him at defendant's home and also as the gun which was used by the defendant on the night of the shooting.

The gun was sufficiently identified as being connected with both the defendant and the crime to warrant its admission into evidence. People v. Jones, 22 Ill2d 592, 177 NE2d 112; People v. Hubbs, 401 Ill 613, 83 NE2d 289.

The judgment of the Criminal Court of Cook County is affirmed.

Judgment affirmed.

SCHWARTZ, P. J. and DEMPSEY, J., concur.