**People of the State of Illinois, Plaintiff-Appellee, v. Haywood Hanson, Otherwise Called Jimmie Hanson, Defendant-Appellant.**

**Gen. No. 51,839.**

First District, Third Division.

June 13, 1968.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Herbert Becker, Norman W. Fishman, and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Howard Levine, Assistant State's Attorneys, of counsel), for appellee.

MR. PRESIDING JUSTICE DEMPSEY delivered the opinion of the court.

In a nonjury trial the defendant, Haywood Hanson, was found guilty of burglary and was sentenced to the penitentiary for not less than two nor more than five years. He contends that the evidence did not establish his guilt beyond a reasonable doubt.

During the night of April 20–21, 1965, the plant of the South Shore Waste Material Company, Chicago, was broken into and a typewriter, adding machine, check-writing machine, two checkbooks, personnel records and clothing were stolen.

Two checks and a check stub were recovered. On April 30, 1965, the defendant offered the proprietor of a tavern a $144.84 check in payment for some drinks he had ordered. He had been in the tavern on other occasions but the proprietor did not know his name. The proprietor said he did not have enough money on hand to cash the check, but that he would take it to a currency exchange. The check was a South Shore Waste Material Company check payable to Robert Spilker. The defendant said his name was Robert Spilker and endorsed the check. The proprietor cashed the check at a nearby exchange and, after deducting the defendant's bill, gave him the balance.

Later in the afternoon of the same day the defendant attempted to cash a South Shore check at another currency exchange. The police were called and arrived as the defendant was walking out the door. The teller pointed to him and said: "Stop that man, he got [sic] a stolen check." The defendant was arrested and searched. A check payable to Haywood Hanson in the sum of $134.32 was found on him.

At the police station the defendant stated that he had received this check from a man named Jim Johnson in exchange for a load of scrap metal which he delivered that day to 35th and State streets. The defendant was searched a second time at the police station and a South Shore check stub was recovered from his wallet. He said he did not know how it got there.

At his trial the defendant denied that he committed the burglary, that the check stub was found on his person and that he cashed a check in the tavern. He testified

that he was in the tavern on April 30th with Robert Spilker, a man who worked for him hauling scrap metal, bricks and other material. He said Spilker cashed the check. He insisted that he got the second check from Johnson and that Johnson had an office at 3505 South State Street. He said he received the check in payment for 7,000 bricks and some metal which he had bought at a building demolition site and that he transferred this material from his truck to Johnson's truck in an alley near Johnson's office. He testified further that when the teller at the currency exchange informed him that the check was no good, he suggested calling the police and waited five minutes for them to come. He freely admitted three prior convictions and said that he pleaded guilty to the prior crimes because he was guilty, but that he was not guilty of the burglary of the South Shore Waste Material Company.

In rebuttal the police officer testified that a driver's license and a social security card bearing the name of Robert Spilker were among the items found on the defendant's person when he was searched at the police station.

The defendant advances seven reasons why the evidence was insufficient to prove his guilt: the interval of ten days between the burglary and his arrest was too great to establish recent possession of stolen property; there was no evidence that he had exclusive possession of the stolen checks during this interval; his explanation about the checks overcame any presumption of theft arising from possessing them; the police did not search his home to see if the articles taken at the burglary were there; the police made tests for fingerprints at the burglarized company but nothing was done to compare them to his; the State did not call Jim Johnson as a witness and the State failed to have Robert Spilker testify.

The last four points are frivolous. There was no testimony that the defendant offered to let the police search

his home and he has no reason to complain that the police did not attempt to build a stronger case against him by obtaining a search warrant and conducting such a search. Although there was testimony that the police looked for fingerprints at the South Shore plant, there was no testimony that suspicious ones were found. The defendant was the only one who said there was a Jim Johnson. The police could not find Johnson in the neighborhood of 35th and State and could not find a metal dealer or a junkyard in that vicinity. It was the defendant's privilege, not the State's obligation, to produce him if he existed. There was reason to suspect that Hanson and Spilker were the same person: the tavern keeper testified that Hanson said he was Spilker and he carried Spilker identification cards. If there was a Robert Spilker he was known to and worked for the defendant. The defendant had the right to subpoena anyone he wished; since he knew Spilker's whereabouts better than anyone else and since it would have been to his advantage to have produced him, he cannot complain that the State did not do so.

Aside from the possession of the stolen checks and the check stub, there is no evidence which connects the defendant with the burglary. However, recent and exclusive possession of stolen goods after a theft, robbery or burglary is sufficient to raise an inference or presumption of guilt unless the attending circumstances, or other evidence, overcomes the inference by creating a reasonable doubt of the defendant's guilt. People v. Strutynski, 367 Ill 551, 12 NE2d 628 (1938). It is sometimes stated that if *unexplained,* the recent and exclusive possession of stolen property gives rise to an inference of guilt which may be sufficient to sustain a conviction unless there are facts and circumstances which leave in the mind of the trier of fact a reasonable doubt of guilt. People v. Franceschini, 20 Ill2d 126, 169 NE2d 244

(1961). In People v. Bennett, 3 Ill2d 357, 121 NE2d 595 (1954), the court put it this way:

> "This court has often announced the rule that the possession of stolen property, the proceeds of a burglary or larceny, soon after the commission of the offense, is evidence of the guilt of the person or persons in whose possession it is found and is sufficient to warrant a conviction unless such possession is explained or unless there appears from all the evidence a reasonable doubt of the defendant's guilt."

The defendant contends that the explanations he gave about the checks nullified whatever inference of guilt might have been drawn from the possession of them— particularly since his explanations were neither denied nor proved false.

When the courts speak of an explanation they do not mean that any explanation overcomes the inference of guilt. It must be a satisfactory explanation—one that the trier of fact finds reasonable and acceptable. This does not mean that a defendant must assume the burden of giving a satisfactory explanation for the possession of stolen property or be found guilty if he does not, for the burden is always upon the State to prove him guilty beyond a reasonable doubt. It does mean, however, that the inference arising from the recent and exclusive possession of stolen property casts the burden of going forward with the evidence upon the defendant. If no explanation is made the inference maintains and the weight to be given it is for the trier of fact to decide. If an explanation is made, the acceptance or rejection of the explanation is also for the trier of fact. The defendant's explanations were not accepted by the trial judge and it cannot be said that they should have been. The defendant is mistaken when he states that his explanations were not denied. They were denied by the total

and contrary evidence of the State; no specific contradiction had to be made in rebuttal to everything he asserted by way of explanation.

Whether the nine or ten days which intervened between the burglary and arrest constituted recent possession, was a question of fact for the trial judge. In People v. Litberg, 413 Ill 132, 108 NE2d 468 (1952), the court said:

> "The presumption of guilt arising from possession of stolen property does not assume that there is any certain time within which the possession may be said to be recent and, therefore, proof of guilt. As a practical matter, as the time between the larceny and the possession is enlarged, the necessity for additional evidence arises. Ordinarily, therefore, the question of whether possession of stolen property is recent enough to raise a presumption of guilt is a question of fact for the jury, or for the trial court where a jury is waived, although in extreme cases it may become a matter of law."

In People v. Kubulis, 298 Ill 523, 131 NE 595 (1921), some of the property supposed to have been stolen was found in the homes of the defendants 24 and 25 days after the burglary. The court reversed their conviction because an instruction submitted by the State, among other faults, assumed that possession of stolen goods 25 days or more after a larceny was evidence of guilt of larceny. The court said:

> "The possession must be so recent as to indicate that the possessor must have taken the property, and where it is so remote in time as to have given fair opportunity to the thief to dispose of the goods and to the defendant to acquire them honestly, possession is slight, if any, evidence of guilt and its weight is

a question of fact for the consideration of the jury, and not to be determined as a question of law by an instruction that the evidence is sufficient to convict."

Ten days may be too long in some instances and not in others. Each case must be decided on its own facts and attending circumstances. Blank payroll checks were stolen in this case and two of the checks, made payable to fictitious employees, were in the possession of the defendant. The time necessary to prepare the checks, plan the procedure for cashing them and selecting the places where the attempts would be made, were some of the factors the trial court had to consider. His conclusion that ten days met the requirement of recent possession is not error. Forty-nine days were not considered too long in People v. Malin, 372 Ill 422, 24 NE2d 349 (1939). In Malin a radio was stolen in a burglary that took place March 11, 1938. The radio was recovered in the defendant's room on April 28, 1938. The court said:

"Approximately six weeks had elapsed from the time of the burglary until the radio was found in Malin's possession. Recency of possession is ordinarily a question of fact for the jury, or for the trial court when a jury trial has been waived, although in extreme cases it may become a matter of law. In determining this question, time is an important element to be considered, but is not the only one. The circumstances and character of the goods, their salability, whether they are cumbersome or easily portable are also among the factors to be considered. No definite time can be fixed as to when, as a matter of law, possession is or is not recent. [Citations.] In our opinion we cannot say, as a matter of law, that possession of a radio in one's room six weeks after its theft, is not a recent possession sufficient

344

to warrant a conviction, in the absence of any evidence or circumstances tending to overcome the presumption of guilt it raises."

The lapse of time between the burglary and the arrest has little relevancy in determining the exclusiveness of possession. While there is no direct evidence that the defendant had exclusive possession of the stolen property during this interval, there is likewise no evidence that he did not. He was in exclusive possession at the time of his arrest and this is sufficient to satisfy the presumption.

The judgment of conviction is affirmed.

Affirmed.

SCHWARTZ and SULLIVAN, JJ., concur.