THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* PATRICIA WILLIAMSON, Defendant-Appellant.

First District (2nd Division)    No. 61012

Opinion filed November 23, 1976.

DOWNING, J., dissenting.

George C. Howard, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and John T. Theis, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE HAYES delivered the opinion of the court:

Following a bench trial held on 4 January 1974, defendant was convicted of the robbery on 9 April 1973 of Flowers H. Nelson (Ill. Rev. Stat. 1973, ch. 38, par. 18—1) and was sentenced to two years periodic imprisonment with restitution. On appeal, her primary contention is that the court committed reversible error in admitting into evidence, for the sole purpose of impeaching her trial testimony, a revolver identified by the victim as one taken in the robbery. A second contention, namely, that the said error cannot be regarded as harmless error, is thus predicated on her primary contention of error.

The victim, a man 75 years of age, testified for the State that, at approximately 11:30 p.m. on 9 April 1973, defendant, who had previously

roomed in his apartment, came to the door of his apartment and rang the doorbell located just outside the door. In response to the ring, the victim opened the door and asked defendant to come in, but, when he tried to close the door, she told him: "I have company with me." Two men with stockings covering their faces rushed in and grabbed the victim. The victim saw defendant go down the hall to the kitchen of the apartment, bend down, and return with rope which the two men used to tie him up; he kept rope in a kitchen cabinet and defendant knew that from her time as a roomer. The men then stuck a needle in his leg and he lost consciousness. When he regained consciousness, a television set, a tape recorder, a small radio, and his pistol were missing from his apartment.

For the defense, Eilene O'Donnell testified that, at the time of the robbery, she was visiting with Nelson in the kitchen of Nelson's apartment. The doorbell rang and, when Nelson answered it, she heard a loud commotion; then, when she came through the hall toward the front door to investigate the commotion, she saw eight or nine men running around the apartment. She was seized and placed on a couch in the living room with her face toward the back of the couch. She did not see defendant, a friend of hers.

Frances Singleton testified that, on 9 April 1973, defendant was living with her in her apartment at 2215 East 70th Street. Defendant left the apartment at 8 or 9 p.m. to go to a hairdresser and returned at 10:30 or 10:45 p.m. "shaking and dirty," nervous and upset, with marks on her wrists. Defendant thereupon called the police, who arrived 20 to 30 minutes later.

Defendant testified in her own behalf that she had planned to visit a woman who lived next door to Mr. Nelson in order to have her hair done. The woman had done defendant's hair when defendant had roomed with Mr. Nelson, and when she had roomed in the woman's apartment for about one month after she left Nelson's apartment. When defendant was in front of Mr. Nelson's building, two men (neither of whom she knew or recognized) approached her and asked if a certain named person lived in that building. She replied that she did not know, but that they could ring a bell and find out. When she entered the small foyer of the building and reached the front door of the victim's apartment, she turned around, and saw that one of the two men had a gun pointed to her head and that the two men now had stockings over their faces. They told her that, if she wanted to live, she had better put a grin on her face. She then rang the apartment bell and Mr. Nelson answered the door, was surprised by the two men, and fell to the floor inside the door. She was pushed into a bedroom off the hall which led to the kitchen at the rear of the apartment, and could not see what was going on. But a short time later, one of the robbers entered the bedroom and grabbed her by the arm. She broke

away from him and ran into the living room, which then was full of men, all of whom wore stocking masks covering their faces. There were eight to ten of the men. Mr. Nelson was lying on the floor of the living room and being kicked, and Eilene O'Donnell (whom defendant, when she was in the bedroom, had heard but not seen as Eilene came through the hall from the kitchen to the front door asking what was going on) was lying on the couch. She (defendant) tried to scratch one of the masked persons in order to help Mr. Nelson; she did not know whether that masked person was a man or a woman, but thought the person was a man. She denied that she had procured any rope to tie up Mr. Nelson or had said anything to him when she came to the apartment door or had taken anything from him. At some time after she had run into the living room, two of the masked men carried her out of the back door of the apartment and put her in the back seat of a car which was parked in the alley. A third man, also masked, was waiting in the driver's seat. One of the two men got into the front passenger seat and the other got into the back seat with her. The latter had a gun; he pushed her to the floor of the back seat and the car was then driven away. She thought the latter was the same person who had earlier come into the bedroom to get her and from whom she had broken away to run into the living room, but she couldn't be sure because, owing to the mask, she couldn't see his face and wouldn't know him if she saw him now. Later the car stopped and the man in the back seat attempted to have sex with her, but desisted when he discovered that she was menstruating. The car drove off again. Her wallet (a change purse, containing money and her door key, which she carried in her brassiere) was taken from her and she was then put out of the car two blocks east of Stony Island Avenue on 67th Street. She walked home from there and then called the police, who arrived at her apartment 20 to 30 minutes later.

On cross-examination, she identified photographs of two men as being photographs of one James Reese and one Darrell Johnson (People's Exhibit No. 1). She further testified that, on 9 April 1973, Darrell Johnson lived at the same address in a different apartment and was present in her apartment when she returned on the night of the robbery; her relationship with Johnson was that sometimes she sits down and talks with him. James Reese was the father of her child (born 31 December 1970), and he occasionally stayed at the East 70th Street address, but was not her boyfriend in April of 1973. Frances Singleton's full name is Frances Reese Singleton, and Frances Singleton is also related somehow to Darrell Johnson.

Chicago Police Officer Edward Johlic testified in rebuttal that, on 27 April 1973, he arrested James Reese and Darrell Johnson (who were then in an automobile), and he discovered a revolver, Serial Number K596736

(People's Exhibit No. 2), in the glove compartment of the car. The victim Nelson was then recalled and he identified the revolver as his and as the one that was taken from his apartment during the robbery. The revolver (as well as the photographs) was admitted into evidence over defendant's objections; the trial judge stated that he was admitting the revolver (as well as the photographs) into evidence "solely as impeachment of the defendant's statement [testimony] * * *·that she did not know who the persons were who were involved in the robbery," and specifically did not know the two men who had questioned her in front of Mr. Nelson's apartment building and who had then followed her to the front door of Nelson's apartment and who (now masked) had forced her to participate in the robbery.[1]

OPINION

Defendant's primary contention on this appeal is that the trial court committed reversible error by admitting into evidence the revolver (a proceed of the robbery) found in the automobile in which Reese and Johnson were riding when they were arrested on 27 April 1973, for the reason that there was insufficient evidence connecting the revolver to defendant. The State responds by seeking to distinguish between the requirements for the admission of the revolver into evidence for the purpose of constituting substantive evidence of defendant's guilt and the requirements for its admission into evidence solely for the purpose of impeaching defendant's credibility by creating at least the possibility that defendant was not telling the truth when she denied that she knew or recognized any of the masked robbers and specifically either of the two robbers who questioned her outside Mr. Nelson's building and then (now masked) followed her into the building and physically compelled her to participate in the robbery. Since the cases cited by defendant deal with admission for the former purpose, defendant in effect contests the validity of the State's suggested distinction.

■■ In effect, the State concedes, as it must, that, had the revolver been admitted into evidence for the former purpose, its admission would

---

[1] In the colloquy at the conclusion of which the trial judge made his ruling admitting the revolver into evidence solely for the purpose of impeachment, the trial judge also said: "However, the defendant did make a statement on cross examination or direct examination as well, I believe, to the effect that she did not know who the actual robbers were, the ones who also abducted her."

A careful reading of defendant's testimony discloses that, on cross-examination, she made the specific denial referred to; on direct examination, she clearly denied knowing or recognizing either of the two masked robbers who had abducted her, denied knowing or recognizing the driver of the car, and denied knowing or recognizing the masked robber whom she had tried to scratch.

We think that it is implicit in her testimony that she denied knowing or recognizing any of the eight to ten masked robbers, and that, when the trial judge said that her testimony was "that she did not know who the persons were who were involved in the robbery", he recognized that implicit denial.

have been error owing to the absence of sufficient evidence connecting the revolver to defendant. In order to admit the revolver for the said former purpose, there must be sufficient evidence to connect the revolver both with the robbery and with defendant. (*People v. Miller* (1968), 40 Ill. 2d 154, 238 N.E.2d 407, *cert. denied*, 393 U.S. 961, 21 L. Ed. 2d 375, 89 S. Ct. 401.) Mr. Nelson's testimony clearly connects the revolver with the robbery, but his sole testimony tending to connect the revolver with defendant is that defendant, from the time when she roomed in his apartment, knew where in the apartment he kept the revolver. But there was no testimony, for example, that defendant took the revolver from the apartment or had possession of it at any time during or after the robbery (*People v. Smith* (1965), 63 Ill. App. 2d 69, 211 N.E.2d 456, *cert. denied.*, 383 U.S. 953, 16 L. Ed. 2d 215, 86 S. Ct. 1218), nor was there any testimony connecting defendant with the automobile in which the revolver was found (*People v. Pruitt* (1974), 16 Ill. App. 3d 930, 307 N.E.2d 142, *cert. denied*, 419 U.S. 968, 42 L. Ed. 2d 184, 95 S. Ct. 232). We need, however, say nothing as to the State's concession because the instant case does not present that issue.

The State contends that, where, as here, the revolver was admitted in a bench trial solely for the purpose of impeaching defendant's credibility by creating at least the possibility that defendant was not telling the truth when she testified that she did not know or recognize any of the several masked men who participated in the robbery and specifically did not know or recognize the two men who first questioned her outside Mr. Nelson's building and who then (now masked) followed her into the building and physically compelled her to assist them in effecting entrance into Mr. Nelson's apartment, the testimony required to support the admission of the revolver into evidence (in addition to testimony connecting the revolver to the robbery), is testimony connecting defendant, not with the revolver, but with the two men in whose possession the revolver was found when they were arrested in their car on 27 April 1973. The inferred connection of those two men with the robbery is based on the doctrine of recent unexplained possession of a proceed of the robbery (*People v. Haywood* (1968), 97 Ill. App. 2d 338, 240 N.E.2d 226 (9 or 10 day time lapse between the robbery and the defendant's being found in possession of the proceed of the robbery); *People v. Leving* (1939), 371 Ill. 448, 451, 21 N.E.2d 391 (proper instruction as to the said doctrine)[2]). And there was ample testimony that defendant knew both of those two men very well.

---

[2] We recognize that, in *Hanson* and *Leving*, the inference of participation arising from recent unexplained possession of a proceed of a robbery was used to connect the respective *defendant* to the robbery in question, whereas in the instant case the said inference is being used to connect, not defendant, but two friends of defendant to the robbery. We think,

■■ In our opinion, the State's distinction is tenable in a bench trial, and there is some support for it in *People v. Tilden* (1964), 50 Ill. App. 2d 354, 358, 200 N.E.2d 33. We hold that the revolver was properly admitted into evidence in this bench trial[3] for the sole purpose of impeachment of defendant's credibility by creating at least the possibility that defendant was not telling the truth in making her said denials.

■■ In summary, defendant contends that the admission of the revolver into evidence solely to impeach her credibility was reversible error because the revolver was not sufficiently connected with defendant, although it was sufficiently connected with the robbery. But we think it suffices, in order to admit the revolver in a bench trial for the sole purpose of impeachment, that defendant was amply connected, not indeed to the revolver, but to the two men in whose possession the revolver was found at the time of their arrest 18 days after the robbery. Under the doctrine of recent unexplained possession of a proceed of the robbery, they were thereby connected with the robbery as inferred participants therein, and defendant, who was on the scene of the robbery, was amply connected with them so as to create the possibility that defendant was not telling the truth when she denied that she knew or recognized any of the eight to ten masked robbers and specifically that she knew or recognized either of the two robbers who questioned her and then followed her into the building and physically compelled her to participate in the robbery.

■■ We now point out that defendant did not contend that the admission of the revolver was prejudicial error because the revolver in fact did not have any impeaching effect on the targeted portion of her testimony, whereas the trial judge said that it had a corroborative impeaching effect and admitted and considered it for that purpose. By failing to object to the admission of the revolver on this ground in the trial court, defendant has waived this ground on this appeal.

But even if we were to treat the said ground on its merits, we do not agree that the revolver had no impeaching effect on the targeted portion of her testimony. The revolver connected Reese and Johnson with the robbery as participants therein. Defendant knew both Reese and Johnson

---

however, that that is a distinction without a difference because, in both *Hanson* and *Leving* and in the instant case, the essential basis for the inference is the same, namely, that such unexplained possession of a proceed of the robbery reasonably infers that the *possessor* was a participant in the robbery.

We think that 18 days is sufficiently recent in view of the fact that neither Reese nor Johnson was a defendant in the instant case and that the gun was admitted solely to impeach the credibility of the instant defendant.

[3] We emphasize that we need not, and do not, make any holding as to the tenability of the State's distinction in a *jury* trial, because in a jury trial there is an additional factor to be considered, namely, whether the jury would be either able to, or likely to, comply with a cautionary instruction explaining the sole purpose for which they may consider the revolver as evidence.

very well. Defendant was on the scene of the robbery, as, by inference, were Reese and Johnson. She knew that the two men who had questioned her were two of the masked robbers. She saw enough of the masked robbers to be able to testify that there were eight to ten of them in Mr. Nelson's apartment and she saw that Eilene O'Donnell was on the couch in the living room. We think that these circumstances create at least the possibility that defendant was not telling the truth in denying that she knew or recognized any of the participants in the robbery. Since the key to the creation of that possibility was the revolver which was connected to Reese and Johnson whom defendant knew very well, we think that the revolver had some possible impeaching effect and that there was a sufficient nexus to allow the revolver to be admitted into evidence in a bench trial solely for the purpose of impeachment.

■■ The weight to be given to the revolver for the purpose of impeachment is, in a bench trial, for the trial judge as the trier of fact. We know from the trial judge's remarks the weight which he did give it; he said he found the revolver helpful as a piece of corroborative impeaching evidence. Since we are not prepared to say that the revolver did not have any impeaching effect whatever, neither can we say that the limited weight which the trial judge gave to the revolver as corroborative impeaching evidence constituted a prejudicial abuse of discretion on his part.

■■ Finally, it is obvious that, since the trial court found Nelson's testimony credible and found defendant's explanatory testimony incredible, there was ample evidence on which to find defendant guilty beyond a reasonable doubt.

Since we hold that, under the circumstances, there was no error in admitting the revolver into evidence for the sole purpose of impeaching defendant's credibility, there is no need for us to consider defendant's second contention that the alleged error was reversible error and not mere harmless error. We will note in passing, however, that defendant's contention that the alleged error cannot be regarded as mere harmless error is based on the fact that it is clear from the record that the trial court considered the revolver on the crucial issue of defendant's credibility and that the revolver therefore contributed to the court's finding that the testimony of defendant was not credible. This is true, but the court considered the revolver as being helpful as a piece of corroborative impeaching evidence. The court indicated that it was corroborative of some other factors which the State had developed which in the court's opinion impeached defendant's credibility. While the court did not enumerate what those other factors were (so that we do not know what he had in mind), defendant did not deny in the trial court that there were

any such factors nor does defendant so contend in this appeal. Corroborative suggests cumulative, and error in admitting evidence which is merely cumulative can be regarded as harmless.

For the foregoing reasons, the judgment of the circuit court of Cook County is hereby affirmed.

Judgment affirmed.

STAMOS, P. J., concurs.

Mr. JUSTICE DOWNING, dissenting:

I must respectfully dissent. In my opinion, for the reasons detailed below, the revolver should not have been admitted in evidence as impeachment of the defendant's testimony. The vice of this action is apparent to me when the trial court, in finding the defendant guilty, clearly included the confiscation of the revolver as one of the elements upon which the finding was based.

## I.

Initially it is important to review the record, as I read it, to determine the extent of defendant's testimony with respect to knowing or recognizing any of the men involved in the events of April 9, 1973. This is significant in order to determine whether there was any impeachment of defendant's testimony.

Defendant in her direct examination testified that two gentlemen approached her; that shortly a gun was pointed to her head; and that she could not tell who was holding the gun as "evidentally [sic] between the time I left that gate and got to that door they had stockings on their faces." She further testified that inside the apartment she tried to scratch someone and she did not know whether it was a man or woman; that inside there were eight to ten men wearing masks; and that later when she was in the back seat of the car the man in the back had a gun, wore a mask, and seemed to be the same person who had been in the bedroom with her in the house. Defendant further testified that as to the robbery, she did not aid any person in any way or plan the robbery with anybody else.

On cross-examination the only testimony involving recognition or knowledge of any of the eight to ten persons is the following colloquy:

"Q Now, Miss Williamson, you said when these two assailants first approached you, they didn't have those stockings on at that time?
A No.
Q They subsequently put on those stocking masks?
A Yes.

Q You didn't reconize [*sic*] any of those individuals at that time, did you?

A No."

It is obvious that defendant, in response to the questions, testified that she did not recognize the two assailants that first approached her. I do not think defendant's testimony supports the interpretation of that testimony as stated by the trial court when the revolver was admitted or by my colleagues in footnote 1, page 4 of the opinion. I am unable to stretch that testimony into suggesting that it is implicit that she denied knowing or recognizing any of the eight to ten masked robbers, or that she did not know the persons involved in the robbery. This is especially true when that is the link used to affirm the trial court.

It is necessary to read the above described testimony in such a way in order to arrive at the "inferences" and "implications" required to find support for admitting the revolver. As mentioned earlier, the revolver was admitted into evidence as impeachment of the defendant's testimony. No authority has been cited either in the majority opinion, or in the State's brief, which supports impeachment of an "inference" or "implication." Nor have I been able to find any such authority. Nor is it a theory that I can adopt.

Defendant clearly acknowledged knowing Reese and Johnson. But she was not asked if Reese or Johnson were present on April 9, 1973 at the time and place of the robbery. Nor is there any testimony in the record that in any manner places Reese or Johnson either at the scene of the robbery or with the defendant at the time and place of the robbery. Likewise, the mere fact that defendant knew Reese or Johnson was in no way inconsistent or contradictory of any of her testimony. Thus I do not think the record supports the trial court in admitting the revolver to impeach the credibility of the defendant.

## II.

In arriving at their conclusion, the majority state "[t]he inferred connection of those two men is based on the doctrine of recent unexplained possession of a proceed of the robbery." *People v. Haywood* (1st Dist. 1968), 97 Ill. App. 2d 338, 240 N.E.2d 226, involving a nine- or ten-day time lapse between the robbery and the possession, along with *People v. Leving* (1939), 371 Ill. 448, 451, 21 N.E.2d 391, involving an instruction as to the doctrine of recent unexplained possession, are cited as authority for the majority position.

*Hanson* is not comparable to the instant situation in that checks taken in a burglary were offered by Hanson to the proprietor of a tavern and later the same day Hanson was arrested after attempting to cash another

check. When arrested Hanson had a stolen check stub in his wallet. There the proceeds of the robbery were directly tied to Hanson. But here the revolver was never directly tied to the defendant. Also, in *Hanson*, this court said whether the nine or ten days which intervened between the burglary and arrest, constituted recent possession was a question of fact for the trial judge, and ten days may be too long in some instances and not in others. In the instant case there is an 18-day lapse, with no evidence as to where the revolver was, or the exclusiveness of the possession, or connection to the defendant. I am unwilling to stretch the word "recent" under the facts and circumstances of this case to 18 days.

*Leving* involved a holdup of a tavern by three persons with handkerchiefs over their faces. The license plate of the getaway car was noted, traced, and the police went to a rental agency to which the car was licensed and arrested Leving as he drove in with the car. On his possession, at that time, was a torn one dollar bill patched with a piece of yellow paper and thereby identified as part of the $40 taken. Leving was also identified as one of the men. The recent unexplained possession involved a defendant, identified as one of the perpetrators of the armed robbery and arrested the same day with proceeds from the robbery, as well as equipment used in the incident. Again, a vastly different situation from the instant case.

The majority cite *People v. Tilden* (1st Dist. 1964), 50 Ill. App. 2d 354, 358, 200 N.E.2d 33, as "some support" for the State's theory of admissibility. *Tilden* involved a murder charge in which Tilden contended he did not deliberately fire a gun at anyone. A shirt with numerous bullet holes worn by one of the persons present was admitted into evidence for the purpose of challenging the plea of self-defense. The shirt was admitted to show patent inaccuracies and improbabilities in Tilden's story. Again the evidence was tied directly to the incident of the crime, not the fact and circumstance in the instant case.

In my opinion the legal foundation upon which the majority support their theory is too porous and nebulous for evidence upon which to find a defendant guilty beyond a reasonable doubt. Especially is this true when the bridge necessary to support the evidentiary gap rests on "inferences" and "implications."

### III.

Before the revolver was admitted into evidence, the defendant objected because (1) the evidence was offered into evidence as rebuttal evidence, (2) there was no testimony that Reese was in any way involved, and (3) there was no evidence defendant had access to the gun. The trial court admitted the revolver "as impeachment of the defendant's statement, in spite of the testimony that she did not know who the persons

were who were involved in the robbery."

The majority note that the defendant did not contend the admission of the revolver was prejudicial error because it did not have any impeaching effect and that defendant has waived this ground on this appeal. I disagree. I think the sophisticated distinction the majority make in interpreting the actual objections of the defendant is not valid as I read the record.

## IV.

Finally, the vice of the trial court's reasoning, in my opinion, is illustrated by the language of the trial court in finding the defendant guilty.

The revolver was admitted for impeachment of defendant's testimony. Therefore, the object was admitted into evidence to attack the credibility of defendant. The revolver is not to be used as substantive evidence. I share with the majority their concern that in a jury trial this distinction cannot be properly maintained by a jury. Here the trial court, when finding the defendant guilty, explained that as the trier of fact he had the responsibility to determine the credibility of witnesses, and in sum believed the victim and not the defendant. Then the trial court said:

> "Moreover, there were certain impeachment factors that were brought out by the State in the testimony of Miss Williamson, and there was some corroboration in this case, for whatever it is worth, and I admit in the scale of probative value, it is not the highest, but it does have some probative value. It is a help to the Court. *The fact that the revolver taken in the robbery is consficated [sic] by the police a very short time after the robbery in the custody of two people who the defendant knows, one of whom actually lives in her apartment complex.*
>
> *For all of these reasons,* there will be a finding of guilty" (Emphasis supplied.)

As I read that statement, the trial court took into consideration the revolver, its recovery 18 days later from persons not directly connected with the robbery but acquainted with the defendant, as one of the "reasons" for finding defendant guilty. Thus the revolver was considered by the trier of fact as substantive evidence.

For all these reasons I would reverse and remand the cause for a new trial.