THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DANIEL SLAUGHTER, Defendant-Appellant.

Second District   No. 76-215

Opinion filed December 30, 1977.

Ralph Ruebner and Daniel Cummings, both of State Appellate Defender's Office, of Elgin, for appellant.

Dennis Ryan, State's Attorney, of Waukegan (Robert S. Baizer, Assistant State's Attorney, and Phyllis J. Perko and Barbara Preiner, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE BOYLE delivered the opinion of the court:

Daniel Slaughter, hereinafter "defendant," was indicted in Lake County for the theft of a Chevrolet truck. After a jury trial the defendant was found guilty of theft and was sentenced to a one- to three-year term.

On appeal, defendant presents two issues for review: (1) Whether he was denied a fair trial by the trial court's admission of testimony concerning a pistol found in the glove compartment of the truck at the time it was repossessed; and (2) Whether he was denied a fair trial where the court prevented him from offering testimony material to his defense.

The defendant does not question the sufficiency of the evidence. However, it is necessary for a disposition of the issues raised that the pertinent testimony be set forth in this opinion. The defendant and his girlfriend, Susan Weinberg, filled out a retail order form in Weinberg's name for a 3/4-ton, four-door pickup truck at Bernard Chevrolet in Libertyville, Illinois, on June 7, 1975. Bernard's finance officer, Jim Winterick, agreed to a $1,003.10 downpayment on the truck, which left a balance of $5,990. Bernard also agreed to install a rear step bumper and platform hitch on the truck. Winterick then transmitted the credit application Weinberg had filled out to the Libertyville National Bank.

On June 10, 1975, the defendant and Weinberg returned to Bernard, and the truck was sold for $6,993.10. Winterick informed the defendant that day that Weinberg's credit application had been approved, but the downpayment had been increased to $1,500. Weinberg then signed the retail installment contract for the truck and defendant made the downpayment with a $1,500 check drawn on the Gurnee National Bank. The defendant then drove away with the truck. On June 20, defendant's check was returned to Winterick, stamped N.S.F. The defendant assured Winterick, when he was informed of the situation, that he would bring him a certified check or cash for $1,500 later in the day. However, the

defendant made no appearance, and Winterick asked a repossession firm to recover the truck.

On June 22, 1975, the defendant called Winterick again, and Winterick advised him to return the truck or give it to the repossessors. Defendant promised to bring the money over that day, but again he did not do so. Defendant also informed Winterick that a brake or bearing had malfunctioned, and Winterick told the defendant that the required repairs would be made if the defendant made the downpayment. Winterick also stated that the defendant never tendered the $1,500 to Bernard.

Miss Weinberg testified that she dated the defendant for two years and that he approached her in May of 1975 and asked her to purchase the truck in her name for insurance purposes. The defendant indicated, however, that he would make the downpayment, all monthly payments, and her sole obligation would be as the owner. She admitted signing the contract on June 10, 1975, as well as the credit application on June 7, 1975. She stated that she had several conversations with the defendant about the truck, including the fact that the locks had been changed and further that she had received a note from the bank indicating that payments on the truck were in arrears. She also testified that in August of 1975 she had made plans to return the truck, but that the defendant's parents had persuaded her otherwise. On cross-examination she further testified that defendant had told her he had not made any payments on the truck because he thought the payments were due at a later date.

Tito Nickolls, the automobile repossessor, testified that he made a number of attempts to repossess the truck. Finally, on September 6, 1975, he repossessed the truck in front of the defendant's parents' home by disconnecting the kill switch and starting the engine. Nickolls further testified that he found a pistol in the glove compartment of the truck and that the defendant was arrested by two police officers who had a warrant for his arrest.

Russell Warye was the owner of the Outdoor Sportsman store in Waukegan, Illinois. He testified that according to his records the gun shown him at trial, which was taken from the truck at the time it was repossessed, was sold to the defendant on March 31, 1975. Defendant's objection to the relevancy of this testimony was overruled, and it was admitted by the trial court only for the limited purpose of establishing the ownership and possession of the truck.

The Assistant State's Attorney, Kenneth Welker, in questioning Roy Lamprich, a Waukegan police officer, asked him if he knew "what happened with the charges about possession of a fire-arm." Defendant's objection to this question was sustained by the trial court, who admonished counsel, "Whatever happened it is immaterial in this case. I tried to explain to you the only reason this is going in is because it tends to

show ownership. It has absolutely—he's not charged with any gun violation in this case."

The parties further stipulated, due to the unavailability of the State's last witness, that on June 9, 1975, the defendant deposited $100 in his personal checking account at the Gurnee National Bank. The parties stipulated that the account was opened on that date and that no further deposits were ever made. The parties also stipulated that a $1,500 check to Bernard Chevrolet, drawn on this account on June 13, 1975, was returned on June 14, 1975, due to nonsufficient funds.

The defendant, a self-employed businessman, testified that he had been unable to purchase the truck in February of 1975 because a bankruptcy three years earlier had made him ineligible for credit. He testified that Weinberg agreed to purchase the truck in her name if he would make the payments. He further stated that the parties agreed to a downpayment of $700, plus $300 in special accessories. He stated that on June 10, 1975, when he returned to Bernard Chevrolet to purchase the truck, he had $900 in cash and a check book. He then was informed that the downpayment was raised to $1,500, and he issued a check for $1,500 to Bernard Chevrolet. The defendant testified that he was under the impression at this time he could cover the check with the $900 in cash, plus $350—which was Miss Weinberg's next paycheck, and that he could raise the rest.

Later that day, the defendant said he called Bob Perry, a racing associate. He told Perry that he needed $1,000 he had given him as soon as possible. The trial court, however, sustained the People's general objection as to what Mr. Perry said to the defendant at this time. The defendant also testified that on June 14, 1975, Bernard's service manager, Paul Hulik, directed him to have the brakes repaired on his truck and send the bill to Bernard. However, after defendant had the truck repaired by Bud Dennis Auto Repairs in Gurnee for $360, Bernard refused to pay. The defendant was told he would have to file a claim with General Motors.

Defendant testified that on June 18, 1975, he again tried to contact Perry to obtain the $1,000. He stated he first received notice from Bernard on June 20, 1975, that his check had been returned. Prior to this, the defendant admitted he had only deposited a little over $100 to cover the $1,500 check. The next morning, the defendant testified, a repossessor who did not identify himself attempted to pick up the truck for Bernard Chevrolet but was unsuccessful. He then contacted Mr. Winterick who told him his check had come back and he would wait until Monday evening for the $1,500, because the defendant again believed he would have the check from Perry by then. The defendant also testified at this time that he offered to pay the $1,500 minus the $360 repairs, and Winterick refused. The defendant stated that on Monday, June 23, 1975, he told Winterick that he was unable to reach Perry in Arizona, but he

again offered to pay the difference between the downpayment minus the repairs.

The defendant testified that he picked up the $1,000 from Perry the following Friday and attempted to deposit the same in his Gurnee account. His account, however, had been closed. The defendant stated he deposited approximately $1,500 altogether in two accounts, personal and business, at the Citizens National Bank. He testified he contacted Mr. Winterick at this time and advised him of his intent to pay the downpayment, but Winterick informed him he intended to prosecute.

The defendant testified that the truck was out of State for approximately 15 days between June 10 and September 6 when the car was repossessed. He stated that during all other times the truck was parked in front of his parents' house and that he had placed equipment in the truck consisting of a $230 tape-player unit, a telephone, a Pulsar, which was part of the tape unit, valued at $2,000, and a $1,200 tool box.

■■ The defendant contends, first on appeal, that he was denied a fair trial by the trial court's admission of testimony concerning a pistol found in the truck's glove compartment at the time of repossession. The defendant concedes that the use of the pistol would be admissible to establish the possession of the vehicle, but he contends that the prejudicial effect of the pistol demonstratively outweighed its probative value. The defendant argues that testimony and evidence of his possession of the truck were not substantially in dispute and had been amply demonstrated by other testimony that the defendant had installed a camper top on the truck, changed the locks, screwed on brackets for a tape-player, and wired a kill switch to the ignition. The defense thus contends that these repeated references to the pistol were unduly prejudicial to his rights to a fair trial and were not rectified by the trial court's admonition at trial that the pistol had been admitted only for the limited purpose of establishing that the defendant was in possession of the truck.

First, we must agree with the defendant that the references at trial to this pistol were substantially cumulative in light of the magnitude and scope of other evidence which conclusively demonstrated that the defendant was in possession of the truck. Accordingly, the trial court erred in admitting this pistol to establish the defendant's possession of the truck. However, upon examination of the entire record, we are of the opinion that this evidence could not have had an impact on the jury's verdict or contributed to the defendant's conviction in light of the overwhelming evidence of defendant's guilt. (*Chapman v. California* (1967), 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824; *People v. Henenberg* (1976), 37 Ill. App. 3d 464, 346 N.E.2d 11.) Further, the admission of this pistol was not so prejudicial as to violate his rights to a fair trial. (*People v. Knippenberg* (1977), 66 Ill. 2d 276, 362 N.E.2d 681.) Therefore we hold

that the admission of this pistol was not unduly prejudicial and was harmless error beyond a reasonable doubt in light of the other evidence. *People v. Williamson* (1976), 44 Ill. App. 3d 208, 2 Ill. Dec. 840, 357 N.E.2d 1283; *People v. Morrow* (1976), 40 Ill. App. 3d 1020, 353 N.E.2d 354.

We also find that the defendant's reliance on *People v. Wade* (1977), 51 Ill. App. 3d 721, 366 N.E.2d 528, and *People v. Hellemeyer* (1975), 28 Ill. App. 3d 491, 328 N.E.2d 626, for the proposition that the introduction of evidence or testimony of weapons constitutes reversible error where the use of the weapons was not a part of the crime, is misplaced.

In *Wade*, the Fifth District held that the admission of a police officer's testimony concerning a gun found on the defendant at the time of his arrest was extremely prejudicial and reversible error, where the State conceded by stipulation at the conclusion of the officer's testimony that ballistics tests had shown that this was not the murder weapon. *Wade* is clearly distinguishable from the case at bar because the testimony concerning the .357 magnum gun admitted there was inadmissible and irrelevant for any purpose after the weapons charge was dismissed against the defendant, and, in addition, was highly prejudicial to a defendant on trial for murder. In our case the introduction of testimony concerning this gun was not unduly prejudicial to our defendant where its sole purpose was carefully delineated to the jury and the main question before the jury was, "Did the defendant have the intention to deprive the owner of this truck by deception?"

In *Hellemeyer*, the Fifth District held that the defendants, who were on trial for burglary and possession of burglary tools, were denied a fair trial because of a *number* of errors committed during the trial. The first error was the State's irrelevant cross-examination of the defendant concerning a gun found in his car, after the State had voluntarily withdrawn the unlawful use of weapons charge. In addition, the court found error where the prosecutor intentionally elicited testimony which created the inference that the defendants exercised their rights to remain silent during police custodial interrogation, and where the State garnered testimony on cross-examination of a defendant which suggested that the defendants had been arrested with another person for theft. The *Hellemeyer* court further noted its agreement with the general statement made in *United States v. Reid* (7th Cir. 1969), 410 F.2d 1223, 1226, that:

> " 'The introduction of testimony concerning dangerous weapons found among the belongings of a person charged with a crime, no part of which depends upon the use or ownership of the weapon, has consistently been regarded as prejudicial error requiring a new trial.' " (28 Ill. App. 3d 491, 500.)

However, the court specifically found that the defendants were denied a

fair trial, not because of the testimony concerning the dismissed weapons charge, but because of the *number* of errors made at the trial. Thus, *Hellemyer* is distinguishable from our case because of the combination and magnitude of errors which denied those defendants a fair trial, whereas the instant cause contains only a harmless error which is unprejudicial to the defendant's right to a fair trial.

The defendant also contends that he was denied a fair trial by the trial court's refusal to admit testimony concerning the substance of two conversations the defendant had with Mr. Perry. The following colloquies are the basis for defendant's claim of reversible error in this court:

"[DEFENDANT]: * * * and I told Bob that I needed the thousand dollars back as soon as possible that I had given him, at which time Mr. Perry—

MR. BIONDI [STATE]: Objection, your Honor.

THE COURT: Sustained.

MR. WELKER [DEFENSE COUNSEL]: Judge, we're not adding to prove the matter asserted. This is going to the intent on Mr. Slaughter's part.

THE COURT: I understand.

MR. WELKER: So you did ask Mr. Perry to send you the one thousand dollars?

A: Yes, I did.

Q: What, if anything, happened in the next few days?

A: I contacted Mr. Perry again and asked him when the money would be back here, at which time he told me it would only be a few days—

MR. BIONDI: Objection.

THE COURT: Sustained"

and

"MR. WELKER: Q What happened the next day, Mr. Slaughter?

A: I contacted Mr. Perry's answering service again in Tucson and left—

MR. HOMER [STATE]: Your Honor, at this time I really am sorry I have to object, but this whole line with Perry is—

THE COURT: I think at least we're past anything that would be appropriate."

The defendant contends that he should have been allowed to relate these conversations with Perry at trial because the statements were relevant to show that the defendant lacked the intent to commit theft by deception and were not offered to prove the truth of the matter asserted therein. Thus, the defendant argues that the trial court's refusal to admit these conversations prevented him from fully presenting his defense at trial and denied him a fair trial.

The People contend in rebuttal that this issue is not properly preserved for review by the defendant because of the defense's failure to make an offer of proof concerning what the testimony would have been had the court permitted it at trial. The defense, in response at oral argument, contends that an offer of proof was not necessary here because the trial judge understood the nature of the proper testimony and that it was being offered to prove the defendant's intent. While we agree with the defendant that the trial court understood *why* the testimony was being offered, *i.e.*, to establish lack of intent and not to prove the truth of the matter asserted, we believe it is unclear *what* the substance of the defendant's testimony would have been concerning his conversation with Mr. Perry, or, in fact, whether this testimony would have been any more relevant or material to his intent than any other evidence adduced at trial.

■■■ It is axiomatic that an offer of proof must be made to the trial court if the exclusion of evidence is to be assigned as error on appeal. (*People v. Limas* (1977), 45 Ill. App. 3d 643, 359 N.E.2d 1194; *People v. Jones* (1976), 40 Ill. App. 3d 850, 353 N.E.2d 375; *People v. Schott* (1976), 39 Ill. App. 3d 266, 350 N.E.2d 49.) In addition, it is the responsibility of trial counsel to explicitly state for the court what the excluded testimony would reveal, and not to merely allude in generalities what might be divulged by this testimony. (*People v. Porter* (1975), 29 Ill. App. 3d 456, 330 N.E.2d 599.) Thus, for this reason alone, defendant's assignment of error with respect to the court's refusal to admit testimony concerning the substance of two conversations with Mr. Perry must be rejected.

■■ Moreover, we are also not persuaded that defendant's testimony concerning Perry's statements to him would have added one iota to the defendant's defense in this cause. The defendant was permitted to fully present evidence and testimony concerning his defense of lack of intent to commit theft by deception in this case. The defendant testified that he wrote the $1,500 check with the knowledge that he had insufficient funds to cover it, but in the belief that he could readily acquire $1,000 from Perry before the bank received his check. The defendant, at no time, deposited any other money into this checking account, nor did the defendant, according to Mr. Winterick, at any time prior to the repossession of the truck, tender the $1,500. In addition, the defendant was allowed to fully testify regarding the reasons Perry owed him the $1,000, the dates and times he contacted or attempted to reach Perry, and to the fact that he received the $1,000 check from Perry on a certain date. Thus, the defendant was given ample freedom to present his theory of the case, such as it was. Under these circumstances we cannot say he was denied a fair trial by the trial court's refusal to admit this evidence. *People v. Limas* (1977), 45 Ill. App. 3d 643, 359 N.E.2d 1194.

The judgment of conviction of the circuit court of Lake County is affirmed.

Judgment affirmed.

SEIDENFELD and WOODWARD, JJ., concur.