THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
LAWRENCE SHERMAN, Defendant-Appellant.

Second District No. 81—622

Opinion filed October 29, 1982.

Alan D. Blumenthal, of Chicago, for appellant.

J. Michael Fitzsimmons, State's Attorney, of Wheaton (Phyllis J. Perko and Judith M. Pietrucha, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE VAN DEUSEN delivered the opinion of the court:

The defendant, Lawrence Sherman, appeals from a verdict entered after a bench trial finding him guilty of theft in violation of section 16—1(a)(1) of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, par. 16—1(a)(1)). The defendant was sentenced to 20 months' probation and was ordered to pay a fine of $300 and restitution in the amount of $700. On appeal, the defendant contends that the conviction must be reversed in that (1) the information was insufficient and, therefore, violated his due process rights, (2) he was not proven guilty beyond a reasonable doubt, and (3) the State failed to preserve potentially favorable evidence.

On January 15, 1980, at 11:23 p.m., Officer James Christman of the Downers Grove Police Department, while on routine patrol, observed an orange Corvette automobile without license plates parked within the Precision Corvette repair shop located on Main Street in Downers Grove, Illinois. The officer asked an employee of the garage,

Michael Hanson, about the auto and also inspected the vehicle. In so doing, he determined that the VIN number on the Corvette reflected a stolen vehicle. After conferring with his commander and the mechanic, Michael Hanson, the officer left the vehicle in the repair garage with exterior surveillance to begin the next day. Surveillance was maintained across the street from the premises on January 16 and again on January 17. At 3:55 p.m. a brown Buick with two males inside arrived at the scene. The Buick parked near the overhead garage door and both men exited the Buick and entered the garage. Within minutes the orange Corvette exited the garage. The Buick followed the Corvette. At that time, Officer Gron of the Downers Grove Police Department received a radio dispatch from the stake-out team requesting that he stop the Buick and Corvette which were traveling in his direction. The officer did so and arrested the driver of the Corvette. The driver of the Corvette was the defendant, Lawrence Sherman. Further investigation revealed that the orange 1976 Corvette was owned by James Budzisz and had been stolen from him on some date on January 1980. Budzisz testified that he subsequently recovered his vehicle from the Downers Grove police pound lot on January 18, 1980, about eight or nine days after it had been stolen. Budzisz did not know the defendant nor had he ever given the defendant permission to exert control over his vehicle.

The information filed against the defendant charged, in substance, that on January 17, 1980, the defendant exerted unauthorized control over the property of James Budzisz, that property being one 1976 Chevrolet Corvette having a total value in excess of $150, and that the defendant had the intent to permanently deprive James Budzisz of the use and benefit of the vehicle in violation of section 16—1(a)(1) of the Criminal Code of 1961. Ill. Rev. Stat. 1977, ch. 38, par. 16—1(a)(1).

Section 16—1(a)(1) of the Criminal Code of 1961 states:
 "A person commits theft when he knowingly:
 (a) Obtains or exerts unauthorized control over property of the owner ***
 ***, and
 (1) Intends to deprive the owner permanently of the use or benefit of the property ***."
 Ill. Rev. Stat. 1977, ch. 38, par. 16—1(a)(1).

Initially, the defendant asserts that the information is defective in that while it facially charged the defendant with theft in violation of 16—1(a)(1), it substantially charged the defendant with receiving stolen goods in violation of 16—1(d)(1). In support of this contention

the defendant notes that the vehicle was stolen in early January and the defendant was not found in possession of the vehicle until the middle of the month. He concludes that the correct charge should have been receipt of stolen goods under subsection (d) and relies upon *People v. Marino* (1970), 44 Ill. 2d 562 for support. This reliance is misplaced.

While the same assertion was made in *People v. Marino,* the supreme court's answer was contrary to that which the defendant in this case suggests. In the *Marino* case, the defendant asserted that because the original asportation of the stolen goods occurred some six months prior to the date of their alleged exertion of control over the stolen goods, they should have been charged with receiving stolen goods under section 16—1(d) and not theft under section 16—1(a). The supreme court disagreed, noting that "section 16—1(a) is not limited to the theft of property in which only the actor who initiates the wrongful asportation is guilty of the offense." 44 Ill. 2d 562, 576; *People v. Nunn* (1965), 63 Ill. App. 2d 465, 470.

As was noted in *Nunn,* subsections (a) through (d) set forth the proscribed acts any one of which would constitute the offense of theft. (*People v. Nunn* (1965), 63 Ill. App. 2d 465, 474.) The act proscribed in subsection (a) is simply the obtaining or exerting of unauthorized control over the property of an owner, whereas subsection (d) has the additional requirement of alleging and proving that the offender received the stolen property from another. (See *People v. Beauchemin* (1979), 71 Ill. App. 3d 102, 106.) In *Beauchemin* the court further stated that subsection (a) can, under certain circumstances, be viewed as a lesser included offense of subsection (d). In light of the supreme court's statements in *Marino,* the holdings in *Nunn* and *Beauchemin,* and the circumstances in this case, the State did not err in charging the defendant with a violation of section 16—1(a) instead of a violation of section 16—1(d).

The defendant next contends that the information failed to set forth all of the elements of the crime of theft, and therefore his due process rights were violated. (See *People v. Heard* (1970), 47 Ill. 2d 501, 505.) In determining whether a charging instrument is sufficient and therefore valid, the reviewing court must keep in mind the purpose of a charging instrument, which is to inform the accused of the nature of the charges against him so as to enable him to prepare a defense and to allow any subsequent judgment flowing therefrom to be used as a bar to further prosecution for the same conduct. (*People v. Phelan* (1981), 99 Ill. App. 3d 925, 929.) To bring a proper charge of criminal offense, the State must allege the nature and elements of

the crime in the charging instrument. (Ill. Rev. Stat. 1979, ch. 38, par. 111—3(3).) This requirement is mandatory and not directory. (*People v. Medreno* (1981), 99 Ill. App. 3d 449, 454; *People v. Deal* (1979), 69 Ill. App. 3d 74, 76.) If the charging instrument fails to set forth the elements of the offense, then a motion in arrest of judgment, if made, must be granted by the trial court. *People v. Lutz* (1978), 73 Ill. 2d 204, 212; *People v. Medreno* (1981), 99 Ill. App. 3d 449, 454.

The defendant contends that one of the essential elements of theft is that the defendant "knowingly" exerted unauthorized control over the property of the owner. The defendant concludes that because the word "knowingly" was omitted from the information, the charging instrument fails to allege an essential element and is, therefore, insufficient.

The State, on the other hand, contends that the information sufficiently alleges the requisite mental state. The State asserts that this case is controlled by the holding in *People v. Wilson* (1973), 10 Ill. App. 3d 48. In *Wilson,* the defendant was also charged with theft in violation of section 16—1(a)(1). As in this case, the word "knowingly" was not contained in the complaint. Citing *People v. Shelton* (1969), 42 Ill. 2d 490, 494-95, the appellate court held in *Wilson* that "knowledge" could be charged "either in the language of the statute or *in other appropriate words.*" (10 Ill. App. 3d 48, 49.) The court then noted that the complaint did allege that the defendant had the specific intent to permanently deprive the owner of the use and benefit of his property. The court stated that a defendant cannot intend to permanently deprive someone of the use and benefit of his property without acting knowingly. Thus the language which alleged that the defendant had specific intent to permanently deprive the owner of his property was sufficient to allege "knowledge."

■ Here, the allegations in the information are similar to the allegations in *Wilson.* While the information does not contain the words "knowledge" or "knowingly," it does allege that the defendant had the specific intent to permanently deprive the owner of the use and benefit of his property. Under *Wilson* the allegation of the specific intent is sufficient to allege the knowledge element, and we agree. The information filed against the defendant was sufficient, and his rights of due process were not violated.

The defendant next contends that the State has failed to prove him guilty beyond a reasonable doubt. Citing *People v. Cortez* (1975), 26 Ill. App. 3d 829, 833, the defendant argues that because all of the State's evidence was circumstantial, proof beyond a reasonable doubt requires the exclusion of every reasonable hypothesis which can be

based on the evidence and which is consistent with innocence.

The initial inquiry, therefore, is whether all of the State's evidence is circumstantial. Circumstantial evidence is the proof of certain facts and circumstances in a given case from which the jury may infer other connected facts which usually and reasonably follow according to the common experience of mankind. (*People v. Rhodes* (1981), 85 Ill. 2d 241, 248-49.) Direct evidence is proof of a fact without the necessity of inference or presumption, or evidence of fact perceived by means of a witness' senses. *People v. Stokes* (1981), 95 Ill. App. 3d 62, 68.

 In the case at bar, the State must prove that the defendant knowingly exerted unauthorized control over the property of another with the intent to permanently deprive the owner of its use and benefit (Ill. Rev. Stat. 1979, ch. 38, par. 16—1(a)(1)). Here, Officer Gron testified that he observed and stopped the defendant while the defendant was driving an orange Corvette. The evidence established that James Budzisz owned the Corvette and that the defendant did not have permission to drive the vehicle. No inference or presumption is required to prove that the defendant exerted unauthorized control over James Budzisz' vehicle. That fact was perceived by means of the officer's senses. Officer Gron's testimony is direct evidence that the defendant may be guilty of theft. Because the defendant's conviction was not based solely on circumstantial evidence, the exclusion of every reasonable hypothesis of innocence is not necessary in order to affirm the conviction.

 █ Generally, the intent to permanently deprive the owner of the use of the property is proved by circumstantial evidence. (*People v. Cortez* (1975), 26 Ill. App. 3d 829, 833.) This element may be inferred from all the facts and circumstances of the case—including a defendant's recent, exclusive and unexplained possession of stolen property. (*People v. Lanzotti* (1978), 61 Ill. App. 3d 451, 454.) Here, the defendant was found in exclusive possession of a recently stolen vehicle. Additionally, joint possession with another is sufficient to constitute exclusive possession within the meaning of the term used in the presumption. (*People v. Harris* (1972), 53 Ill. 2d 83, 87.) The law in Illinois is that the recent, exclusive possession of stolen property, without a reasonable explanation, in and of itself gives rise to an inference of guilt which may be sufficient to sustain a conviction in the absence of other facts and circumstances which leave in the mind of the trier of fact a reasonable doubt as to the guilt of the accused. *People v. Hawkins* (1963), 27 Ill. 2d 339, 341; see also *People v. Housby* (1981), 84 Ill. 2d 415, 422.

In *Hawkins,* the defendant was involved in a traffic mishap. Shortly thereafter, it was determined that the defendant had been driving a stolen vehicle. The defendant was charged with theft in violation of section 16—1(a)(1). Although the defendant did not testify at trial, through cross-examination of a police officer, it was established that earlier the defendant had told the officer that he did not steal the automobile. He had explained to the officer that the vehicle belonged to someone named Black Sam, who had given it to the defendant so that the defendant could purchase some wine. In affirming the defendant's conviction, the supreme court applied the earlier cited presumption of guilt, notwithstanding the defendant's uncontradicted explanation. Noting that the defendant did not know Black Sam's last name, or where he worked, lived or could be found, the supreme court determined that the trial court was justified in not accepting the defendant's story and affirmed the defendant's conviction.

In *People v. Stock* (1974), 56 Ill. 2d 461, 475, the supreme court, in explaining the presumption found in *Hawkins,* stated that the defendant may not defeat the inference of guilt by the mere fact of raising any explanation. The defendant's explanation must be a satisfactory explanation which the trier of fact finds to be reasonable.

■ Here, the trial judge also found the defendant's explanation to be unreasonable. Whether the defendant's explanation is deemed reasonable is primarily a question of fact for the trier of fact. (*People v. Hainline* (1979), 77 Ill. App. 3d 30, 34.) If the trier of fact does not believe the story, the possession is considered not explained and the presumption is still valid. *People v. Burris* (1969), 116 Ill. App. 2d 79, 83.

In both *Hainline* and *Burris,* however, the defendant's explanation was contradicted by other evidence presented by the State. Here, the defendant's explanation is uncontradicted. We note, however, that the explanation in *People v. Hawkins* (1963), 27 Ill. 2d 339 was also uncontradicted yet the supreme court affirmed the conviction.

The defendant, nonetheless, argues that because his explanation was uncontradicted it must be accepted by the trier of fact. (*People v. Weiss* (1976), 34 Ill. App. 3d 840.) At first view, *Weiss* would seem to support the defendant's contention. In *Weiss* the defendant was convicted of the receipt of stolen goods. The evidence established that the defendant had a telephone in his apartment. By using circumstantial evidence, the State established that the phone was stolen. The defendant explained that the unconnected phone was in the apartment when he moved in, that he did not know it was stolen, and that he had not used it. In reversing the trial court, the appellate court

stated that even though the State had introduced sufficient evidence to make a *prima facie* case, it was insufficient to take the case to the jury once the defendant offered his uncontradicted explanation of his possession.

*Weiss* is distinguishable from the instant case in that all of the evidence in *Weiss* was circumstantial. Moreover, in *Weiss,* the defendant was not charged with theft under subsection (a) as in this case, but was charged with theft by the knowing receipt of stolen goods under subsection (d). The inference of guilt to be drawn from recent possession of stolen goods, as discussed in *Hawkins*, is inapplicable when the defendant is charged under subsection (d). (*People v. Malone* (1971), 1 Ill. App. 3d 860, 863.) The presumption, however, is applicable when the defendant is charged with a violation of subsection (a). (See *People v. McIntosh* (1977), 48 Ill. App. 3d 694.) Here, defendant is charged under subsection (a), theft by knowingly exerting unauthorized control through mere possession of the property, intending to permanently deprive the owner of its use. *People v. Helm* (1973), 10 Ill. App. 3d 643, 646.

In *People v. McIntosh* (1977), 48 Ill. App. 3d 694, the court explained the application of the rule that the possession of a recently stolen automobile is sufficient to warrant a conviction for theft of that automobile and the application of the rule when the defendant chooses to offer an explanation:

"The usual application of the above rule requires the State to introduce evidence that the auto had in fact been recently stolen before defendant was found to be in exclusive possession. Such evidence creates an inference of guilt which can be rebutted by defendant's explanation. The procedure was fully explained by the court in *People v. Hanson,* 97 Ill. App. 2d 338, 240 N.E.2d 226:

'When the courts speak of an explanation they do not mean that any explanation overcomes the inference of guilt. It must be a satisfactory explanation—one that the trier of fact finds reasonable and acceptable. This does not mean that a defendant must assume the burden of giving a satisfactory explanation for the possession of stolen property or be found guilty if he does not, for the burden is always upon the State to prove him guilty beyond a reasonable doubt. It does mean, however, that the inference arising from the recent and exclusive possession of stolen property casts the burden of going forward with the evidence upon the defendant. If no explanation is made the inference maintains and

the weight to be given it is for the trier of fact to decide. If an explanation is made, the acceptance or rejection of the explanation is also for the trier of fact.' (97 Ill. App. 2d 338, 342.)

Moreover, a defendant who chooses to explain his possession of stolen property must offer a reasonable story or be judged by its improbabilities. [Citations.]" 48 Ill. App. 3d 694, 700.

In *McIntosh,* the defendant was found in possession of a stolen 1970 Volkswagen. At trial he stated that he had purchased the vehicle from a Bill Krocheck, in Collinsville, Illinois, for $800. The defendant was able to produce a receipt. The court noted that the VIN plate on the vehicle was loose and that the license plates were not registered to the defendant. The court stated that the defendant's explanation left unanswered questions and was not worthy of belief. The court concluded that the defendant's explanation was insufficient to raise a reasonable doubt of his guilt.

The narrow issue before us here is whether the defendant's explanation was sufficient to raise a reasonable doubt of his guilt. At trial the defendant testified to the following. He is the president and national salesman of Kelly Cartage Company, an interstate trucking company located in Chicago, Illinois. In his job, the defendant oversees the day-to-day operation of a trucking company, which utilizes 20 to 30 trucks and has a 35-door dock.

As a hobby, Mr. Sherman collects, buys, and sells Corvette automobiles. He also buys and sells parts for Corvettes. In order to purchase the Corvettes and parts, he attends weekly auctions which are open only to dealers, such as himself. On occasion, the defendant will purchase a salvage automobile for spare parts. He stated that a salvage automobile could be a theft recovery, a burnt or stolen vehicle, a damaged car, or a bank repossession.

The defendant gave the following explanation of his possession of the stolen vehicle. At noon on January 16, 1980, the defendant received a phone call from someone named Michael Hanson, an employee of Precision Corvette Company in Downers Grove. Hanson told the defendant that one of his clients had a vehicle which was a theft recovery and that the client wanted to dispose of the vehicle. Although Hanson was not a friend of the defendant, the defendant agreed to take the vehicle to the automobile auction. The defendant informed Hanson that he would try to pick up the vehicle that evening. The defendant testified that he did not pick up the vehicle until approximately 4 p.m. the next day, January 17, 1980. Earlier that day he had received another call from Hanson. Hanson asked him to

"please get the car out of his building, that he wanted to take it to the auction." The defendant told Hanson that he was interested in either buying the Corvette or taking it to the auction and that he would be there as soon as possible. The defendant asked one of the men on the dock, Gregory Gill, to go with him to pick up the car. When the defendant arrived at Precision Corvette, he spotted the orange Corvette and tried to start it. Because the car would not start, Michael Hanson charged the battery. The defendant started the Corvette and drove away. He was at Precision no more than five minutes. Gregory Gill was following the defendant in defendant's mother's Buick. Shortly thereafter, the defendant was pulled over and arrested.

On cross-examination, the defendant admitted that the ignition was not quite right; it was loose in the column and the keys did not fit well. According to the defendant, the vehicle looked like any other theft recovery, in that parts are usually missing from theft recoveries. He stated that he often received theft recoveries from reputable people. This was the first time he had received one from Hanson. The defendant admitted that he did not see, nor did he request to see a title to the Corvette. The defendant stated that it is a common procedure at auctions to sell a vehicle without a title. Any sales made are contingent upon production of titles. When asked whether he knew which police department had recovered the vehicle, the defendant stated that he did not know and that he generally doesn't ask those questions. The defendant testified that at the time he drove the vehicle away he had not yet made a decision as to whether he would buy the Corvette or take it to the auction.

While this explanation cannot be categorized as preposterous or ridiculous, it is uncorroborated. The defendant did not call Michael Hanson, Hanson's client, or Gregory Gill to corroborate his story.

Although the explanation is not patently false, the trial judge found the explanation to be improbable, and this finding does have support in the defendant's own testimony. Even though the defendant stated that he was interested in purchasing the Corvette, it took him less than a few minutes to pick up the vehicle. It can be argued that generally prospective purchasers spend more than a few minutes discussing the terms and conditions of the sale with the seller. In fact, there is no evidence that any price was ever discussed. Moreover, from the defendant's testimony, it seems that the defendant had obtained something in the nature of an option over the vehicle; he could choose to either buy it or sell it at the auction. Yet the arrangement between him and Hanson was quite informal, so informal as to be improbable. It also seems improbable that someone interested in pur-

chasing a vehicle, especially a theft recovery, would not ask more questions concerning the state of title and registration, the identity of the owner, and the conditions under which the car was recovered.

It can be argued that under the circumstances in this case, only a naive person would take possession of the vehicle without further inquiry. The defendant, however, was not a naive consumer; he was a dealer who bought, sold, and collected Corvettes.

■ In a bench trial, the trial judge is charged with the responsibility of determining the credibility of the witnesses and we must give due deference to that determination. (*People v. Deming* (1980), 87 Ill. App. 3d 953, 960.) The record makes evident that the trial court did not believe the defendant or accept his explanation. From the total circumstances shown by the evidence, we cannot say that the defendant's explanation was sufficient to overcome the trial court's determination that defendant was guilty beyond a reasonable doubt.

We have also considered the other issues raised by the defendant, namely, that the State failed to prove that the vehicle was owned by someone other than the defendant; that the defendant did not have authority to drive the vehicle; and that the State's failure to preserve the allegedly altered VIN plate violated the defendant's due process rights. We find them to be without merit.

The judgment, conviction, and sentence of the trial court are affirmed.

Affirmed.

SEIDENFELD, P.J., and LINDBERG, J., concur.