THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOHN BATINICH, Defendant-Appellant.

First District (3rd Division)   No. 1—89—0939

Opinion filed April 18, 1990.

Turner & Wolff, of Chicago, for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Renee Goldfarb, William D. Carroll, and Diann L. Doppelt, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE CERDA delivered the opinion of the court:

Following a jury trial, the defendant, John Batinich, was convicted of committing the offense of delivery of a controlled substance (Ill. Rev. Stat. 1987, ch. 56½, par. 1401(a)(2)) and was sentenced to a six-year term in the Department of Corrections. On appeal, the defendant contends that: (1) he was denied a fair trial when hearsay statements were made suggesting his involvement in other crimes; (2) the use of such hearsay statements implicating him in other crimes denied him his sixth amendment right to confront witnesses; (3) the trial court erred in precluding him from introducing evidence of his good reputation and character; (4) the prosecution improperly commented upon his post-arrest silence; (5) the trial court erred in giving certain jury instructions; and (6) he was not proved guilty beyond a reasonable doubt. We affirm.

On July 21, 1987, the defendant was arrested for selling eight ounces of cocaine to an undercover drug agent. The evidence reveals that on July 9, 1987, an informant advised an investigator from the Arlington Heights police department, Steven Livas, that the defend-

ant was dealing in cocaine. Livas testified that he first met the informant, Jerry Lock, at the Palatine police department after Lock had been arrested for possession of cocaine. Lock agreed to act as an informant and was offered a deal if he supplied names of drug dealers and arranged transactions between the dealers and undercover agents. Lock supplied Livas with the defendant's name and a transaction was arranged. On July 20, Investigator Livas contacted Agent Steven Traub from the Drug Enforcement Administration and asked Traub if he would act as the buyer in the operation. The evidence revealed that Agent Traub and Lock were similar in height, weight, and age, and both had graying hair and a mustache, and wore glasses. The seller was supposed to think that Agent Traub was Lock.

On the afternoon of July 21, Traub drove to a parking lot at a Baker's Square restaurant located at Dempster and Greenwood avenues in Niles, Illinois. Shortly thereafter, the defendant drove into the parking lot and parked his car next to Traub. Traub testified that he exited his car and walked to the defendant's vehicle whereupon the defendant asked him if he was Jerry. After a brief conversation, Traub returned to his car and retrieved an envelope containing $11,000. After Traub entered the defendant's car, they left the parking lot and drove for several blocks until they arrived at an empty parking lot next to a bank only two blocks away from the restaurant. Traub testified that during the drive to the bank's parking lot, the defendant asked him if they had met before. Traub testified that he replied that they had met a year earlier when they were involved in a transaction by Martha Washington Hospital. Traub further testified that the defendant questioned him about what kind of car he used in that transaction, apparently an effort to test his buyer to ensure he was dealing with who he thought was Lock. Once inside the bank's parking lot, the defendant placed his hand under the dashboard behind the glove compartment and a grey plastic bag dropped to the floor at Traub's feet. Traub picked up the bag and opened it. Inside he discovered a cylindrical-shaped object wrapped in tin foil. Traub peeled away the tin foil and found another plastic bag containing white powder. Traub testified that the defendant stated "there is [sic] eight there, there is [sic] eight there," referring to their agreement to sell eight ounces of cocaine. Traub gave a prearranged arrest signal, and the officers who had been conducting surveillance effected the defendant's arrest. A chemist testified that the substance delivered to Agent Traub was cocaine.

The defendant testified that he thought he was delivering jewelry as a favor for a friend. He stated that on the evening of July 20 his

friend, Lou Nanoz, called him at his home three or four times to arrange the delivery. The testimony revealed that Nanoz was in the automobile business and sold jewelry on the side. The defendant, who has been employed as an auto mechanic since he immigrated to Chicago from Yugoslavia in 1972, testified that he first became acquainted with Nanoz when they worked at the same dealership in the early 1980's. The defendant testified that he was asked to meet an individual named Mike the following day. Mike contacted the defendant on July 21, and they arranged a meeting at a coffee shop next to the defendant's place of employment. After picking up a package which he was told would contain jewelry, the defendant went back to work to change his clothing. The defendant stated that he left to run some errands and then drove to meet Jerry Lock, whom he had never met before. The defendant further testified that he concealed the package under the dashboard because he was driving a convertible. The defendant also stated that he drove to the bank parking lot because he wanted to go to a quiet place. The defendant further admitted to advising Traub that there were "eight" in the package, but testified that he was referring to what he believed were eight pieces of jewelry: three watches, two rings and three necklaces. The defendant denied knowing Jerry Lock prior to July 21 and denied participating in any deals with him. He further testified that he never looked inside the package and that he did not look when Traub opened it in his car.

The defendant's wife testified and corroborated his testimony that Nanoz had called him several times on July 20. She also stated that she had never seen her husband in possession of drugs. Other witnesses corroborated the relationship between the defendant and Lou Nanoz and stated that Nanoz sold jewelry as a side business.

The defendant first argues that he was denied a fair trial because of statements referring to the defendant as a drug dealer and references to a prior drug deal between himself and Jerry Lock. The defendant asserts these statements were in violation of the rule against evidence of other crimes to show a defendant's propensity to engage in criminal activity. The statements defendant complains of include: (1) remarks made during the prosecution's opening statement referring to the defendant as a drug dealer and a conversation between the defendant and Agent Traub regarding a prior deal; (2) testimony by the undercover agents describing the same; and (3) a question posited to the defendant during cross-examination asking about the "prior deal." The defendant additionally maintains that these statements were also inadmissible hearsay.

During the prosecution's opening statement, the prosecutor stated

that after a meeting with an informant, Investigator Livas "came away from that brief meeting with the name of a person" and that "the name he was given was John Batinich." That statement was made immediately after the prosecutor explained that Livas had a meeting with an informant to obtain the names of persons involved in "narcotics trafficking in the northwest suburban area." The defendant's objection to these remarks was overruled. A short time later, the prosecutor reenacted a conversation that took place between the defendant and Agent Traub when the defendant mistakenly believed that he was talking to Jerry Lock. According to the prosecution's version of that conversation, the defendant and Traub discussed a prior deal they did together. No objections were made to these opening remarks. The defendant next complains of testimony by Investigator Livas that Lock divulged a name of a "mid level dealer out of the northwest." The defendant objected to the testimony as hearsay, but the trial judge overruled the objection. The defendant further complains about the testimony of Agent Traub implicating the defendant in a prior deal. The following testimony was elicited:

"Q. And what if anything was said after that?

A. Then right after that he said, 'Have we met before?' And I—.

Q. I am sorry.

A. He said, Have we met before? You know, in terms of a question.

Q. All right, did you reply?

A. Yes, I did. Well, it has been a while, approximately a year. I said I was in the car. You passed by. We did that other deal by Martha Washington Hospital.

Q. All right, I see. Did he talk about that other deal any further?

A. Only to say, after I said everything I knew about that deal or alleged deal, he asked me whose car was I in. And I said, Louie's.

Q. And did he say anything after that?

A. Yes. He said, 'No, no, no.'

Q. What was said next?

A. Then I said, well, I said, it was just like the car I am in today. It is not my car. I was just using somebody's car. Then I assumed Louie was using somebody's car at the previous deal.

Q. Did the defendant say anything after that?

A. Yes. He thought about a second, and he said, 'Well, it was dark.' "

The defendant also made no objections to this line of questioning. However, the defendant did object during the prosecution's cross-examination of the defendant when the prosecutor asked: "During the time were you doing a similar deal?" The trial judge sustained the defendant's objection and instructed the jury to disregard the question.

The first facet of defendant's argument is that the aforementioned references to drug dealing and the alleged prior deal denied him a fair trial because they constituted evidence of other crimes. The defendant cites *People v. Pitts* (1971), 1 Ill. App. 3d 120, 122, 273 N.E.2d 664, wherein the court explained that it was permissible to argue the issue of other crimes on the constitutional grounds of denial of fair trial although the issue is traditionally treated under the rules of evidence. In *Pitts*, testimony was elicited from the arresting officer that upon arrest, the defendant remarked that he was in trouble because he was on parole. The court held that the arresting officer's testimony was inadmissible evidence of other crimes and denied the defendant a fair trial notwithstanding the action of the trial judge in striking the testimony and giving a cautionary instruction. The other facet to the defendant's argument is that the evidence itself was incompetent because it was inadmissible hearsay. We address first those statements referring to the defendant as a drug dealer.

■ The general rule is that evidence of other crimes is inadmissible if its only relevance is to show that the defendant has a propensity to commit crime. (*People v. Kimbrough* (1985), 138 Ill. App. 3d 481, 485 N.E.2d 1292.) Such evidence is excluded because the law distrusts the inference that because the accused has committed other crimes or wrongful acts, it is more likely that the accused has committed the crime charged. (*Kimbrough*, 138 Ill. App. 3d at 484.) Evidence of other crimes is admissible, however, when it is relevant for any purpose other than to show the defendant's propensity to commit crimes. (*Kimbrough*, 138 Ill. App. 3d at 484.) It is well established that evidence of other crimes is admissible to show motive, intent and *modus operandi*. (*Kimbrough*, 138 Ill. App. 3d at 484.) It has also been held that evidence suggesting other criminal activity is admissible where the evidence is relevant to explain the circumstances of a defendant's arrest (*People v. Davis* (1981), 93 Ill. App. 3d 187, 191, 416 N.E.2d 1179) and the arresting officer's reasons for commencing surveillance (*People v. Hunter* (1984), 124 Ill. App. 3d 516, 529-30, 464 N.E.2d 659).

■ In the instant case, the trial judge did not permit Livas to testify as to the substance of his conversations with Jerry Lock. Livas

testified to the fact that such conversations occurred and that he thereafter engaged in a course of action culminating in an undercover drug transaction. The testimony was relevant to explain the investigatory procedures leading to the defendant's arrest. The court further finds that no objectionable hearsay was admitted. Although the testimony indicated that the informant gave the defendant's name to Livas as a "drug dealer out of the northwest," this testimony was not hearsay because it was not offered to prove the truth of the matter asserted. (*People v. McNeal* (1987), 160 Ill. App. 3d 796, 800-01, 513 N.E.2d 897; *People v. Loggins* (1985), 134 Ill. App. 3d 684, 692, 480 N.E.2d 1293; *People v. Thomas* (1975), 25 Ill. App. 3d 88, 92, 322 N.E.2d 597.) The testimony was elicited to explain why an undercover operation involving the defendant was set in motion. It is proper for an officer to explain the circumstances of his investigation and testify as to how he came upon the defendant's identity. (*McNeal*, 160 Ill. App. 3d at 800-01; *People v. Gully* (1986), 151 Ill. App. 3d 795, 799; *Thomas*, 25 Ill. App. 3d at 92.) We further find that the evidence was not unfairly prejudicial.

Turning our attention to the statements referring to a prior deal between the defendant and Jerry Lock, the State contends the defendant waived review of the issue by failing to object when the conversation between the defendant and Traub was described by the prosecutor in his opening remarks and by Traub on direct examination. (*People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124.) The court agrees that this issue was not properly preserved for review. In any event, the conversation about the prior deal was admissible. It is also well established that evidence of other crimes is admissible when relevant to prove the presence of knowledge and intent or the absence of an innocent frame of mind. (*People v. Bartall* (1983), 98 Ill. 2d 294, 309-10, 456 N.E.2d 59; *People v. McKibbins* (1983), 96 Ill. 2d 176, 185, 449 N.E.2d 821; *People v. Goodman* (1979), 75 Ill. App. 3d 369, 372-73, 393 N.E.2d 1233; *People v. Cole* (1963), 29 Ill. 2d 501, 503, 194 N.E.2d 269.) The State bore the burden of proving that the defendant "knowingly" possessed a controlled substance with intent to deliver. Further, the defendant claimed that he thought he was delivering jewelry as a favor for Lou Nanoz. He also stated that he had never before delivered jewelry on his friend's behalf. Consequently, evidence that the defendant was involved in a prior deal was highly relevant. In *People v. Miller* (1983), 120 Ill. App. 3d 495, 499, 457 N.E.2d 1373, and *People v. Hill* (1978), 56 Ill. App. 3d 510, 512, 371 N.E.2d 1257, the second and fourth districts held that statements made by the defendant about future sales during the transaction for

which the defendant was charged were admissible to show the defendant's present state of mind during the transaction. The result should be no different when the defendant talks about prior sales during a transaction. Although Agent Traub's testimony relating his conversation with the defendant about the prior deal was offered to prove the truth of the matter asserted, it was not objectionable hearsay as it disclosed admissions by the defendant (*People v. McDowell* (1984), 121 Ill. App. 3d 491, 499, 459 N.E.2d 1018) or was admissible as part of the *res gestae. People v. Sessions* (1968), 95 Ill. App. 2d 17, 24, 238 N.E.2d 94; *People v. Calcaterra* (1965), 33 Ill. 2d 541, 547, 213 N.E.2d 270.

■■ The defendant argues next that the statements indicating that Jerry Lock implicated him as a drug dealer also denied him his sixth amendment right to confront witnesses. (U.S. Const., amend. VI.) Because Livas' testimony was not offered to prove the truth of the matter asserted, but, rather, was offered to detail the investigatory steps leading up to the defendant's arrest, the defendant was not denied his right to confront witnesses. (*McNeal*, 160 Ill. App. 3d at 800-01; *Gully*, 151 Ill. App. 3d at 798-99; *Hunter*, 124 Ill. App. 3d at 528-29. Cf. *Tennessee v. Street* (1985), 471 U.S. 409, 413-14, 85 L. Ed. 2d 425, 430, 105 S. Ct. 2078, 2081. See also *People v. Johnson* (1987), 116 Ill. 2d 13, 24, 506 N.E.2d 563 (holding that detectives "did more than simply recount what had been done" as their testimony regarding statements given by defendant's accomplices "directly implicated the defendant in these crimes").) Further, even if Livas' testimony played a substantive role in the case, we conclude that any error in this regard was harmless error beyond a reasonable doubt. *Johnson*, 116 Ill. 2d at 26-28.

■■ The defendant further contends that the trial court erred in refusing to permit him to introduce evidence of his good reputation and character. The record discloses that the defendant sought to present evidence that he is a law-abiding citizen. A defendant in a criminal case may present evidence of his good character in order to establish that his character traits are inconsistent with the commission of the crime charged. (*People v. Flax* (1986), 147 Ill. App. 3d 943, 951, 498 N.E.2d 667, 672.) The decision to admit such evidence is within the sound discretion of the trial judge. (*People v. Kurena* (1980), 87 Ill. App. 3d 771, 778, 410 N.E.2d 277.) However, such evidence must relate to the specific character trait involved in the offense charged. (*People v. Hall* (1987), 159 Ill. App. 3d 1021, 1027, 513 N.E.2d 429.) A defendant cannot introduce evidence that he has never been convicted, charged or arrested in order to establish good

character. (*Flax*, 147 Ill. App. 3d at 952.) Therefore, the trial court did not abuse its discretion. The court further finds that even if such evidence should have been admitted, it was harmless error. See *Kurena*, 87 Ill. App. 3d at 778.

■ The defendant also contends that reversible error occurred when the prosecutor asked him if he had told the police upon arrest that he thought the package contained jewelry. The defendant argues that the question was an impermissible comment upon the defendant's silence in violation of *Doyle v. Ohio* (1976), 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240. In *Doyle*, the Court held that silence following recitation of the *Miranda* warnings is always insolubly ambiguous because such silence may be nothing more than the arrestee's exercise of his right to remain silent, and that it is fundamentally unfair to use a defendant's post-*Miranda* silence against him after inducing him to remain silent. (*Doyle*, 426 U.S. at 617-18, 49 L. Ed. 2d at 97-98, 96 S. Ct. at 2244-45.) Questions such as the one asked here are intended to invite the jury to infer from the defendant's silence that his exculpatory story is a recent fabrication. (*People v. Tate* (1978), 63 Ill. App. 3d 119, 127, 379 N.E.2d 693.) Nevertheless, where, as here, the question is promptly objected to and not answered, and the court sustains the objection and instructs the jury to disregard the question, there is no "use" of the defendant's silence. (*Greer v. Miller* (1987), 483 U.S. 756, 97 L. Ed. 2d 618, 107 S. Ct. 3102.) Moreover, we find that even if the question was error, it was harmless beyond a reasonable doubt in view of the overwhelming evidence supporting the jury's verdict.

The defendant argues next that the trial judge erred in giving certain jury instructions. Over the defendant's objections, the trial court submitted to the jury Illinois Pattern Jury Instructions, Criminal, No. 3.11 and No. 3.06—3.07 (2d ed. 1981) (IPI Criminal 2d). IPI Criminal 2d No. 3.11 pertains to prior inconsistent statements, and IPI Criminal 2d No. 3.06—3.07 pertains to statements by the defendant which would constitute admissions, confessions or false exculpatory statements.

■ The defendant asserts that there was no evidence of prior inconsistent statements and, therefore, IPI Criminal 2d No. 3.11 should not have been given as it probably misled the jury. The State contends that the instruction was properly given, citing the testimony of Investigator Traub regarding the conversation he had with the defendant where the defendant made statements acknowledging the prior deal. The defendant denied the substance of this conversation and denied his involvement in any prior deals. Although the defendant was not impeached in the traditional sense, Investigator Traub's testimony

served dual roles in that it served as substantive evidence showing knowledge or the absence of an innocent frame of mind and was also inconsistent with the defendant's testimony. Therefore, the instruction is not objectionable on the grounds asserted by the defendant.

The defendant further maintains that IPI Criminal 2d No. 3.06—3.07 should not have been given, arguing that it unduly emphasized the credibility of the defendant over that of the other witnesses. The instruction was undoubtedly given because of Traub's testimony regarding his conversation with the defendant. The instruction directs the jury to determine whether the defendant did in fact make the statements, and if so, the weight to be attributed to the statements. The instruction did not unduly emphasize the credibility of the defendant.

Although both instructions covered the same evidence, the court finds that the instructions were not confusing or repetitive. We therefore hold that there was no abuse of discretion.

Finally, the defendant contends that he was not proved guilty beyond a reasonable doubt. In determining whether the evidence is sufficient, the reviewing court must view the evidence in the light most favorable to the prosecution and then determine whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. (*People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267.) After examining the record, we are convinced that there was sufficient evidence. The defendant's sole defense was that he thought he was delivering a package of eight pieces of jewelry. The evidence showed, however, that he hid the package under the dashboard and drove to a secluded location to make the transfer. The evidence also showed that while driving from the restaurant to the secluded bank parking lot, he took a route consisting of a series of turns and a distance of eight blocks to reach a destination only two blocks from the point of departure, the logical inference being that the defendant took care to ensure he was not being followed. Thus, even if we ignore the testimony regarding the defendant's prior drug deal with Jerry Lock, we believe the jury could have rationally concluded beyond a reasonable doubt that the defendant knowingly delivered cocaine.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Judgment affirmed.

RIZZI and FREEMAN, JJ., concur.