2026 IL App (2d) 250179-U
No. 2-25-0179
Order filed March 31, 2026

**NOTICE:** This order was filed under Illinois Supreme Court Rule 23(b) and is not precedential except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant,

v.

TERRANCE JOHNSON, Defendant-Appellee.

Appeal from the Circuit Court of Kane County.
Honorable John A. Barsanti, Judge, Presiding.
No. 17-CF-657

JUSTICE BIRKETT delivered the judgment of the court.
Presiding Justice Kennedy and Justice McLaren concurred in the judgment.

**ORDER**

¶ 1    *Held*: In defendant's prosecution for possession of a controlled substance with intent to deliver, where the State sought to admit text messages between defendant and others because they allegedly showed defendant's prior involvement in the drug trade and were relevant to both knowledge and intent to deliver, the trial court erred in excluding all of the messages as impermissible propensity evidence. A propensity inference was required on the issue of intent, but not knowledge.

¶ 2    The State appeals from an order of the circuit court of Kane County denying its motion *in limine* to admit certain text messages between defendant, Terrance Johnson, and others as other-crimes evidence in this prosecution for unlawful possession of a controlled substance with intent to deliver (720 ILCS 570/407(b)(1) (West 2016)). We modify the order and remand for further proceedings.

¶ 3                                    I. BACKGROUND

¶ 4    On July 19, 2017, defendant was indicted on, *inter alia*, a single count of unlawful

possession of a controlled substance with intent to deliver. The charges arose from the discovery

of contraband in defendant's jacket in the early morning hours of April 1, 2017. At that time,

police officers had responded to a motor vehicle accident involving defendant. Paramedics

attending to defendant had him remove his jacket. They handed it to a police officer, who

discovered the contraband in a pocket. Defendant moved to suppress the contraband on the basis

that its discovery was the result of an unlawful search. At the hearing on the motion, defendant

admitted that he had cocaine in his jacket pocket at the time of the accident. The trial court granted

the motion, but we reversed the suppression order and remanded to the trial court for further

proceedings. *People v. Johnson*, 2020 IL App (2d) 190935-U.

¶ 5    On remand, the State filed a motion *in limine* seeking to admit exchanges of text messages

between defendant and others that took place between March 21, 2017, and April 4, 2017. The

motion stated, *inter alia*:

> "[The text messages] are relevant and highly probative of the defendant's *knowledge of*
>
> *cocaine inside his jacket pocket*. Furthermore, these communications are highly probative
>
> of the defendant's *intent to deliver* the same. The probative value of this evidence is not
>
> substantially outweighed by the danger of unfair prejudice." (Emphases added.)

The motion invoked Rule 404(b) of the Illinois Rules of Evidence (Ill. R. Evid. 404(b) (eff. Jan. 1,

2011)), which governs the admissibility of other-crimes evidence. The State indicated that it was

prepared to present the testimony of an expert witness explaining how the text messages related to

the sale of drugs. The text messages included an exchange between defendant and someone

identified as "S.P." that took place between 11:41 p.m. on March 29, 2017, and 1:15 a.m. on March

30, 2017. Defendant also engaged in an exchange of text messages with someone identified as "W." that took place between 8:13 p.m. on March 30, 2017, and 5:09 p.m. on April 1, 2017. The final message in the latter exchange was W.'s message, "Need a 40."

¶ 6 At the hearing on the motion, the prosecutor initially argued that the text messages were admissible to show intent and "completeness and context" of the communications. The trial court interrupted the prosecutor midsentence, asking what he meant by "completeness and context." In the ensuing exchange between the court and the prosecutor, the court probed how the text messages were relevant to intent. There was no discussion of whether the text messages were admissible to establish the element of knowing possession, as the State had argued in its motion.

¶ 7 The trial court continued the matter for a ruling on the motion and offered the parties the opportunity to submit case law in support of their positions. The State submitted, *inter alia*, *People v. Marshall*, 256 Ill. App. 3d 310 (1993), decided by the First District Appellate Court. In *Marshall*, the court held that evidence of the defendant's prior drug sales was probative of his knowledge and intent as to the current offense of possession with intent to deliver. *Id.* at 319.

¶ 8 The trial court denied the State's motion *in limine*, dismissing *Marshall* as "wrongly decided" and calling its holding "ridiculous." The court remarked, "The fact that they're holding this admissible to prove that he knew they were narcotics doesn't make any sense to me." According to the court, for the text messages in this case to be admissible, there had to be some "connection" between them and the cocaine seized from defendant. The court expressly found that there was "no connection between these texts and the substances found in defendant's jacket pockets after the accident." The court explained that "defendant could be possessing cocaine which is completely separate from any cocaine that any of these people calling him were trying to buy." In the court's view, the text messages were probative of nothing more than the defendant's

propensity to sell drugs and were therefore inadmissible. The court's written order stated, "After hearing on State's Motion *in Limine* to admit [Rule] 404(b) evidence, the court [d]enies State's motion for reasons stated on the record."

¶ 9 The State moved to reconsider, reiterating that, under *Marshall*, the evidence was admissible to show both knowledge and intent. When the prosecutor stressed this point at the hearing on the motion to reconsider, the following exchange occurred:

"THE COURT: Knowledge about what, knowledge that they were drugs?

ATTORNEY McCALL [(ASSISTANT STATE'S ATTORNEY)]: Knowledge that the defendant knew that he was possessing the drugs on his person. Yes, that he knew that it was in fact cocaine.

THE COURT: Why is that—would that be an issue? Is there going to be some defense argument that he didn't know that they were drugs?

ATTORNEY McCALL: Judge, there could be. It was a jacket which the defendant was wearing and it was taken off by emergency personnel and handed to the officer.

So, there could be a potential for that issue to come about at trial, yeah—yes.

THE COURT: And he would think all of that white powder in the bag would be what?

ATTORNEY McCALL: I can't speak for the defense, [Y]our Honor.

THE COURT: Okay. It's a facetious question anyway. ***."

¶ 10 After hearing the parties' arguments, the trial court deferred ruling on the motion, but stated:

"[M]y original decision was based on the fact that all of those—the only, in my mind, use that you can put all of those messages through [*sic*] would be to the idea that he was a drug dealer because it's not connected to anything else.

I don't need them to be connected. I don't need that. I don't think that's a necessary point. I wouldn't be requiring that in order to let certain other crimes evidence in.

The only reason I think this is—as they always say in all of these cases, it's not just the fact that it is prejudicial—admissible or not, it's highly prejudicial, which is what everybody tries to get away from here."

¶ 11 On a subsequent court date, the trial court denied the motion to reconsider, reasoning as follows:

"I think that the State has somehow confused my point. For purposes of explanation, I asked them last time we were before the [c]ourt if any of the drugs seized on the [d]efendant were [or] somehow could be *** connected to any of the messages, and I think he read that to mean that I was looking for similarities. I'm not looking for similarities. I'm not concerned with—I'm not concerned with similarities. I was concerned with it being improper, the evidence that they wanted to put in. I thought it was for propensity and I still believe that. I don't care about the similarities at all. What I was referring to is the fact that my view on this case would be that there's a limited amount at this point, apparently. I'm thinking this may be a limited amount of substances, and that it becomes important to find a way to prove intent on that and I think that's what the problem here is; and that the reason that I asked that is because if those—if it was that some of those substances could be—could be connected to a text message, that wouldn't be proof of other crimes, that would be proof of this crime and you wouldn't have to go down this road; but in the end,

- 5 -

I'm not changing my determination that those text messages are inadmissible. Their only—

their only purpose would be proof of propensity which is illegal and not admissible, so I

am denying the Motion to Reconsider."

The State filed a notice of appeal and a certificate of impairment.

¶ 12                                    II. ANALYSIS

¶ 13    We initially consider whether we have jurisdiction to hear this appeal. The State cites

Illinois Supreme Court Rule 604(a)(1) (eff. Apr. 15, 2024), which specifies the types of orders or

judgments from which the State may appeal. Defendant argues that this appeal is outside the scope

of that rule. As pertinent here, Rule 604(a)(1) permits the State to appeal from "an order or

judgment the substantive effect of which results in *** suppressing evidence." *Id.* Our supreme

court observed years ago that this language "appears to allow an appeal from *any* order precluding

the admission of evidence." (Emphasis added.) *People v. Young*, 82 Ill. 2d 234, 239 (1980).

Orders "suppressing" evidence are not limited to those excluding evidence obtained as the result

of an unlawful search and seizure or an involuntary confession. *Id.* at 242-43. However, the *Young*

court limited appeals by the State under Rule 604(a)(1) to cases where "a pretrial suppression order

*** substantially impairs the State's ability to prosecute the case" involved. *Id.* at 247. The

determination of whether the exclusion of evidence substantially impairs the State's ability to

prosecute a case is left to the prosecutor, who must certify that the order does so. *Id.*

¶ 14    A prosecutor's certificate of impairment does not, however, settle the question of whether

the order in question truly "suppress[es] evidence." *Id.* at 239-40. To illustrate, in *People v. Truitt*,

175 Ill. 2d 148, 149-50, 153 (1997), *abrogated in part on other grounds by People v. Miller*, 202

Ill. 2d 328 (2002), our supreme court held that Rule 604(a)(1) did not authorize the State to appeal

from a pretrial ruling invalidating, on constitutional grounds, a statute providing that, in

prosecutions for drug offenses, laboratory reports from the Illinois State Police's forensic science division were admissible as *prima facie* evidence of the weight and identity of tested substances. Notwithstanding the State's certificate of impairment, the *Truitt* court held that the order did not "suppress evidence." *Id.* at 152-53. The court reasoned that the order "[would] not prevent any facts or opinions from being presented to the jury." *Id.* at 152. Rather, the order affected only the *manner* in which certain facts could be presented; "[i]nstead of being able to rely on a piece of paper, the State [would] have to present testimony from an actual witness." *Id.*

¶ 15 Defendant insists that the order denying the State's motion *in limine* did not "suppress[ ]" the text messages. Defendant's jurisdictional challenge flows, in part, from the State's own arguments on the merits in this appeal. The State argues, in essence, that whether or not the text messages were otherwise admissible, the prosecution's expert would be permitted to refer to them in his testimony because he relied on them in forming his opinion that defendant possessed the cocaine with the intent to deliver. See Ill. R. Evid. 703 (eff. Jan. 1, 2011). Defendant maintains that the trial court did not bar the State's expert from referring to the text messages to explain how he formed his opinion. Thus, according to defendant, the State has an avenue for presenting the content of the text messages to the jury.

¶ 16 Defendant apparently fails to recognize that, although an expert witness may base an opinion on facts or data that are not admissible in evidence (*id.*), the facts or data do not thereby *become* admissible evidence (*In re Commitment of Moore*, 2023 IL App (5th) 170453, ¶ 52).

¶ 17 Defendant further contends that the State's argument on appeal with respect to the merits of the trial court's ruling "undercut[s]" its theory of jurisdiction. According to defendant:

"[T]he State argues that the content of the text messages within '24 hours' of the incident is 'direct' evidence, and the [State's] expert could still testify to his opinion on [defendant's]

intent, without the admission of the texts. Since this is a denial of a pre-trial order with a narrow scope, the trial court has not ruled on the State's assertions that (1) it can present the text messages within 24 hours as direct evidence of intent for the cocaine recovered or (2) it can present an expert opinion that the messages show [defendant's] intent to sell the cocaine."

¶ 18     The argument is meritless. We note that the text messages in question were not "direct evidence" of any material fact. "Direct evidence is proof of a fact *without the necessity of inference or presumption*, or evidence of fact perceived by means of a witness' senses." (Emphasis added.). *People v. Sherman*, 110 Ill. App. 3d 854, 859 (1982). The text messages in question did not directly prove that defendant intended to deliver the contraband discovered in his possession. Rather, the messages in the days immediately preceding the discovery of the contraband could give rise to the inference that defendant intended to sell that contraband to W. and S.P. Thus, the texts are *circumstantial* evidence of defendant's intent. See *id.* ("Circumstantial evidence is the proof of certain facts and circumstances in a given case from which the jury may infer other connected facts which usually and reasonably follow according to the common experience of mankind.").

¶ 19     Defendant's jurisdictional challenge fails, however, because although the State's motion characterized the text messages as other-crimes evidence, the trial court reasoned that the texts were unconnected to the contraband in defendant's possession. Contrary to defendant's argument, this was not a narrow holding on only one theory of admissibility that left other routes open for the State to use any of the text messages as evidence of defendant's intent. Moreover, in its motion to reconsider, the State expressly conceded that "there are no messages which are specific to the cocaine found on the defendant's person." In any event, defendant's reasoning applies only to a

subset of the text messages the trial court suppressed. The suppression of the other text messages is sufficient to vest us with jurisdiction to hear this appeal under Rule 604(a)(1).

¶ 20 Turning to the merits, the State's two-fold argument is that (1) the two exchanges of text messages on the day defendant was found to be in possession of cocaine were "evidence that he intended to deliver the cocaine he possessed, and would have done so but for the crash" and (2) "[t]he more 'remote' messages *** were admissible to show defendant's intent through his continuing business of drug sales and continuing course of conduct."

¶ 21 Trial court rulings on motions *in limine* pertaining to the admission or exclusion of evidence are reviewed for an abuse of discretion. *People v. Safranek*, 2025 IL App (4th) 240967, ¶ 73. However, where the trial court's exercise of its discretion has been compromised by a misapprehension of the applicable legal principles, "appellate review is required to permit the exercise of discretion consistent with the law." *People v. Williams*, 188 Ill. 2d 365, 369 (1999). Thus, we consider not only the trial court's ultimate decision, but also its reasoning in reaching that decision.

¶ 22 Rule 404(b) states:

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith except as provided by [statutory authority not applicable here]. Such evidence may also be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Ill. R. Evid. 404(b) (eff. Jan. 1, 2011).

¶ 23 *Marshall*, which the State relied on during the proceedings below, predated the adoption of Rule 404(b), but its reasoning is consistent with the language of that rule. In *Marshall*, the defendant challenged his conviction of possession of a controlled substance with intent to deliver,

arguing that the trial court improperly considered the testimony of police officers that the defendant had previously been arrested on multiple occasions for suspected narcotics trafficking. *Marshall*, 256 Ill. App. 3d at 312, 318. The *Marshall* court rejected the argument, citing, *inter alia*, *People v. Batinich*, 196 Ill. App. 3d 1078 (1990), for the proposition that "the State may circumstantially prove both the knowledge and intent elements of [possession of a controlled substance with intent to deliver] by establishing that the defendant has had past narcotics-related encounters with law enforcement officials." *Marshall*, 256 Ill. App. 3d at 319.[1]

¶ 24     In *Batinich*, the defendant was found guilty of unlawful delivery of a controlled substance based on evidence that he sold eight ounces of cocaine to an undercover officer. *Batinich*, 196 Ill. App. 3d at 1079. An informant, who claimed to have engaged in a past drug transaction with the defendant, arranged a meeting between the defendant and the officer. *Id.* at 1080. The officer, who physically resembled the informant, went to the meeting posing as the informant. *Id.* The officer testified that, during the meeting, the defendant asked him if they had met before. *Id.* The officer replied that they had engaged in a prior drug transaction. *Id.* The defendant asked what car the officer was driving when the prior transaction occurred. *Id.* (The *Batinich* court suggested that the defendant's questions were designed to confirm that "he was dealing with who he thought was [the informant]." *Id.*) The defendant testified that he thought he was delivering jewelry to the officer as a favor for a friend. *Id.* The *Batinich* court concluded that the evidence of the prior

---

[1]The *Marshall* court also cited *People v. Mitchell*, 129 Ill. App. 3d 189 (1984), but that case did not involve evidence of a prior drug transaction. Rather, it involved evidence of a conversation between an undercover police officer and the defendant. *Id.* at 196-98. The conversation took place after the charged drug offense but pertained to that offense. *Id.*

transaction was admissible to show the defendant's state of mind during the transaction. *Id.* at 1084-85.

¶ 25    In *People v. Smart*, 2025 IL 130127, ¶ 72, which was decided during the pendency of this appeal, our supreme court explained that the threshold criterion for admission of evidence under Rule 404(b) is that the relevance of the evidence does not depend on an inference of the defendant's propensity to commit crimes. "If the State shows the evidence relevant without relying on a propensity inference, the court, applying [Illinois] Rule [of Evidence] 403 (Ill. R. Evid. 403 (eff. Jan. 1, 2011)), must determine whether the prejudicial effect of the evidence substantially outweighs its probative value." *Id.*

¶ 26    As noted, the trial court here characterized the reasoning in *Marshall* as "ridiculous," adding, "The fact that they're holding this admissible to prove that he knew they were narcotics doesn't make any sense to me." According to the State, this language indicates that the trial court ignored controlling precedent. Defendant responds, in essence, that the court's reasoning was consistent with *Smart* and that its application of the law to the facts of this case was not otherwise an abuse of discretion. According to defendant, although the court had discretion to admit the text messages, it did not abuse its discretion by declining to do so.

¶ 27    We begin by considering the precedential effect of *Marshall*, which, according to the trial court, was "wrongly decided." In the absence of conflicting decisions among the various districts of the appellate court, a trial court is bound to follow precedent from *any* district. See *State Farm Fire & Casualty Co. v. Yapejian*, 152 Ill. 2d 533, 539-40 (1992). However, unlike the trial court, we are not bound by appellate court decisions from other districts. *People v. Cooper*, 2024 IL App (2d) 220158, ¶ 71. A party cannot limit our scope of review by framing the issue on appeal as whether the trial court adhered to precedent from another district. When a case reaches this court,

- 11 -

the question of whether the trial court was faithful to a decision from another district is purely academic. See *People v. Munoz*, 2026 IL App (2d) 250025, ¶ 30.

¶ 28    In support of the trial court's reasoning, defendant asserts that *Marshall* is "outdated" and that the court was faithful to *Smart* (even though *Smart* had not yet been decided when the court ruled on the State's motion). Both assertions are arguably true with respect to the "intent to deliver" element. It is unclear how, in this case, an inference of that element is anything more than an extrapolation of an improper inference of propensity. In light of *Smart*, the viability of that aspect of *Marshall* is open to question.[2] However, the inference that defendant's possession of the cocaine was "knowing" is an entirely different matter. Prior participation in drug sales has long been held relevant to the question of knowing possession. See, *e.g.*, *People v. Cole*, 29 Ill. 2d 501, 503 (1963) ("[W]e have allowed evidence of narcotics transactions by a defendant other than the one for which he is being tried where such evidence is relevant to prove *** his guilty knowledge."); *People v. Moser*, 356 Ill. App. 3d 900, 913 (2005) (witness's testimony that the

---

[2]In its opening brief, the State argues that "[o]ther crimes and bad acts can also be admitted 'if it is part of the "continuing narrative" of the charged crime.' " However, the State offers no guidance in its opening brief on how to define the contours of a "continuing narrative," and we conclude that this argument is not sufficiently developed to warrant review. See *People v. One Black 2016 Jeep Wrangler Unlimited*, 2025 IL App (2d) 240314, ¶ 42 ("Mere contentions, without argument or citation to authority, do not merit consideration on appeal."). Although the State develops the argument at length in its reply brief, Illinois Supreme Court Rule 341(j) (eff. Oct. 1, 2020) provides that "[t]he reply brief, if any, shall be confined strictly to replying to arguments presented in the brief of the appellee." Defendant did not raise any argument pertaining to the State's "continuing narrative" theory. Accordingly, we will not consider the arguments in the State's reply brief pertaining to that theory.

defendant had sold him cocaine on multiple prior occasions was relevant to show that the defendant knowingly possessed cocaine as charged). It is entirely reasonable to infer that persons whose vocations, whether lawful (*e.g.*, a police officer or forensic technician) or not (*e.g.*, a drug dealer), put them in contact with controlled substances, would recognize such substances in their possession. In either case, the inference of knowledge is direct. In the latter case, the *additional* inference of propensity is entirely collateral to the inference of knowledge. *Smart* does not automatically bar admission of evidence carrying a collateral inference of propensity to commit crime. The trial court's conclusion that "[the] only purpose [served by admitting the text messages] would be proof of propensity which is illegal and not admissible" is supported by neither the facts of this case nor the applicable law set forth in *Marshall*, *Smart*, and Rule 404(b).

¶ 29    Moreover, the trial court's "facetious" question to the prosecutor—"And [defendant] would think all of that white powder in the bag would be what?"—suggests that the court did not believe knowledge was even at issue. To the contrary, "[t]he State has the burden to prove every element of the offense beyond a reasonable doubt, including the mental state required of the offense." *People v. Cunningham*, 2019 IL App (1st) 160709, ¶ 28. Subject to the rules of evidence, it is for the State to decide how to meet its burden. As our supreme court stated years ago: " 'when a trial is upon a plea of not guilty, the State is permitted to go ahead and introduce its full proof of the crime charged in the indictment.' " *People v. Speck*, 41 Ill. 2d 177, 202 (1968) (quoting *People v. Scheck*, 356 Ill. 56, 62 (1934)) *vacated in part on other grounds sub nom. Speck v. Illinois*, 403 U.S. 946 (1971).[3]

_____

[3]We also note that defendant's admission at the suppression hearing that he had cocaine in his possession is not admissible as evidence in the State's case-in-chief. See *Simmons v. United States*, 390 U.S. 377, 393-94 (1968).

¶ 30   We are likewise unpersuaded by defendant's attempt to distinguish *Marshall* on the bases that it involved a larger quantity of drugs and that the "other crimes" evidence was the defendant's prior arrests, rather than text messages. For purposes of proving a defendant's knowledge that a substance in his or her possession is a controlled substance, the relevant fact is whether defendant was previously engaged in the drug trade and therefore likely to be familiar with the characteristics of illegal drugs. We fail to see how it matters whether proof of the defendant's involvement in the drug trade is based on the defendant's prior arrests (as in *Marshall*) or his communications with others (as in this case).

¶ 31   Defendant further argues that we should affirm the trial court's decision because the State's argument in the trial court was confusing and the State did not offer a "non-propensity theory" for admission of the text messages. According to defendant, the State "went back and forth between referencing the text messages as if they were directly related to the cocaine at issue, but then also that they were circumstantially related." By "directly related," defendant apparently means that the State intended to use the text messages not as evidence of *other* crimes but as evidence related to the crime with which defendant was charged. However, the record demonstrates that the trial court understood that the State sought to admit the text messages as evidence of defendant's involvement in the drug trade and the court found that they were not admissible for that purpose.

¶ 32   We further observe that the prosecutor had barely begun arguing when the trial court interrupted with a line of questions focused almost exclusively on the admissibility of the texts as evidence of intent. The court largely ignored their admissibility as evidence of knowledge. In both its motion to reconsider and its argument on that motion, the State reminded the court that it sought to admit the text messages as evidence of both knowledge and intent. As noted, however, the trial court signaled that knowledge was a nonissue.

- 14 -

¶ 33    Additionally, the proceedings below took place before our supreme court decided *Smart*, which clarified that, for other-crimes evidence to admissible, " 'it must be relevant without relying on a propensity inference.' " *Smart*, 2025 IL 130127, ¶ 71 (quoting *United States v. Gomez*, 763 F.3d 845, 859 (7th Cir. 2014)).  The State cannot be faulted for failing to specifically address that requirement (*i.e.*, to offer "a non-propensity theory") when it had not yet been announced.  Moreover, the trial court did not deny the State's motion because it concluded that the relevance of the text messages relied on a propensity inference.  To the contrary, the trial court concluded that the "*only* purpose [the text messages would serve] would be proof of propensity."  (Emphasis added.)  As we have explained, that conclusion is clearly incorrect.  Indeed, had *Smart* been decided when the State argued its motion, the State could have easily shown that the text messages met that decision's relevancy requirements.

¶ 34    Defendant correctly notes that, under *Smart*, once a court has determined that other-crimes evidence is relevant and that its relevance does not depend on an inference of propensity, the next step is to determine whether the danger of unfair prejudice substantially outweighs the probative value of the evidence.  See *id.* ¶ 72.  Defendant maintains that, because the trial court found that the evidence did not meet the threshold relevance requirement, the court was *not required* to perform the second step.  Nonetheless, according to defendant, the court *did* perform the second step, finding the evidence "highly prejudicial."  Although the trial court made a prejudice finding, it could not properly weigh prejudice against probative value after finding, incorrectly, that the evidence had no probative value at all.  We conclude that the danger of unfair prejudice stems not simply from the fact that the text messages portray defendant as a drug dealer, but from the sheer volume of the messages, which could focus the trier of fact's attention excessively on unrelated offenses.  Thus, we decline to hold that the trial court was obliged to admit all the messages.  We

note that this case remains at the pretrial stage almost nine years after defendant was indicted. Rather than prolong the resolution of this case with further proceedings below on the State's motion *in limine*, we exercise our power to modify the order denying the State's motion *in limine* so as to permit the State to introduce defendant's text message exchanges with W. and S.P. between March 29, 2017, and April 1, 2017. The trial court has discretion to admit additional text messages if offered at trial.

¶ 35                              III. CONCLUSION

¶ 36    For the reasons stated, we modify the order of the circuit court of Kane County denying the State's motion *in limine* so as to allow the introduction of the aforementioned text message exchanges with W. and S.P., and we remand for further proceedings.

¶ 37    Order modified; cause remanded.